**KERN RIVER GAS TRANSMISSION CO., Plaintiff–Appellant,**

v.

**The COASTAL CORPORATION, et al., Defendants–Appellees.**

No. 89–2831.

United States Court of Appeals, Fifth Circuit.

May 8, 1990.

Rehearing Denied June 15, 1990.

---

**50.** *Pegues,* 698 F.Supp. at 119.

**51.** Plaintiff's Exhibit 191.

J. Timothy Hobbs, Vincent M. Amberly, David C. Gryce, Mason, Fenwick, Lawrence, Washington, D.C., Alan H. Gordon, William D. Raman, Arnold, White, & Durkee, Houston, Tex., for plaintiff-appellant.

Robin C. Gibbs, Robert N. Brailas, Gibbs & Ratliff, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY and JONES, Circuit Judges.

CLARK, Chief Judge:

Kern River Gas Transmission Company ("Kern River") brings an interlocutory appeal from the district court's denial of a preliminary injunction against Wyoming–California Pipeline Company ("Wy–Cal") under section 502(a) of the Copyright Act of 1976 (the "Act"), 17 U.S.C. § 502(a). By means of lines added to government survey maps, Kern River depicted the proposed route of a natural gas pipeline and submitted the maps to the Federal Energy Regulatory Commission (the "Commission") and other federal and state regulatory agencies in support of its application for authority to build the pipeline. Wy–Cal copied portions of the maps and submitted the copies to the Commission and other agencies in furtherance of its own application for authority to build a pipeline in the same corridor. The district court denied preliminary injunctive relief, holding that the proof did not establish the existence of

a substantial threat of irreparable harm to Kern River, and that it showed Wy–Cal's use of the maps was fair use within the meaning of section 107 of the Act. Finding the maps at issue are not copyrightable under the Act, we affirm.

I

In the mid–1980s Kern River was engaged in intense competition with Mojave Pipeline Company for Commission approval to construct an interstate pipeline to supply natural gas to areas in and around Kern County, California. A large new market for natural gas had developed there among producers of heavy oil who burned gas to produce steam used in enhanced oil recovery. Kern River applied in 1985 to the Commission for a certificate of public convenience and necessity to construct a pipeline from southwestern Wyoming through Utah and Nevada to southern California. In May 1986 the Commission consolidated Kern River's application with that of Mojave, which had proposed to serve the southern California market by a different route, and ordered an administrative law judge to hold comparative evidentiary hearings. Among other findings, the ALJ predicted that the enhanced oil recovery market in southern California would be unable to support more than one interstate pipeline. *Public Utilities Comm'n v. FERC,* 900 F.2d 269, 283 (D.C.Cir.1990).

In the course of preparing data requested by the Commission and other state and federal regulatory agencies, Kern River drafted and submitted to the Commission several sets of maps depicting its entire proposed route and variations. Kern River submitted two sets of maps in October 1986, one set being on the scale of 1:250,000 (the "large-scale" maps), and the other at 1:24,000 (the "quad" maps). The quad maps are the focus of the copyright controversy here. They consisted of lines and mile markings drawn by Kern River on topographical maps published by the United States Geological Survey. Kern River developed the maps by conducting full, independent field work along every segment of the proposed route. Copies of Kern River's quad maps and the maps of its competitors were supplied to the Chambers Group, an environmental consultant under contract with the Commission and the California State Lands Commission to draft an environmental impact statement (EIS) describing and evaluating the pipeline construction and operation along the proposed route. Various other state and federal agencies as well as interested private parties received copies of the maps. Once submitted to the Commission, copies of the maps were available to all competitors who wished to study them.

In January 1987, the Chambers Group published a draft EIS. The document depicted among other things a mile-wide corridor running the length of Kern River's proposed route, as well as two variations proposed by Kern River known as the Wasatch and North Las Vegas Variations. The Commission's staff approved the EIS in December 1987. Staff approval was significant because any proposed pipeline constructed within the mile-wide corridor would require no further environmental study, whereas any route falling outside the corridor would be subject to further inquiry.

Wy–Cal applied to the Commission in August 1987 for a nonexclusive "Optional Expedited Certificate" pursuant to 18 C.F.R. Part 157, Subpart E. It proposed to adopt a 450–mile segment and other portions of Kern River's route. Wy–Cal drafted its own set of 1:250,000 maps in support of its application and submitted them to the appropriate agencies. In February 1988 the Commission served a data request on Wy–Cal asking for quad maps for fifty-two miles of Wy–Cal's route in Wyoming and Nevada that were not common to any of the corridors approved in the EIS. Wy–Cal complied and also created quad maps depicting its entire route at the request of the California State Lands Commission. Wy–Cal prepared all of these quad maps without reference to or use of any Kern River map. The Commission denied a motion to consolidate Wy–Cal's application with those of Kern River and Mojave.

In March 1988, after delivery of the requested maps to the Commission and the California State Lands Commission, the Chambers group notified Wy–Cal that the line drawn on their maps indicated Wy–Cal's proposed route still deviated from the EIS corridor in certain locations. Chambers permitted draftsmen employed by Colorado Interstate Gas Co., an affiliate of Wy–Cal and one of its codefendants below, to come to Chambers' Albuquerque, New Mexico headquarters to ascertain the exact location of the center line of the EIS corridor, and to plot that line onto their own maps. During the draftsmen's visit, Chambers Group personnel provided them with reduced-scale copies of Kern River's quad maps. The draftsmen copied the center line for the entire EIS-approved route as depicted on Kern River's quad maps. None of the maps contained a copyright notice and Wy–Cal had no notice of any copyright claim until Kern River brought this action in the district court. Kern River registered the quad maps with the Copyright Office in February 1988 when it determined that Wy–Cal had copied them.

The Commission issued a final certificate of public convenience and necessity to Wy–Cal in March 1989. Kern River then brought this action against Wy–Cal for copyright infringement and misappropriation. In Count One of its complaint, Kern River asserted that all of the maps it had created and submitted to the Commission were copyrightable material and had been copied by Wy–Cal, causing Kern River "extreme damage." Kern River argued essentially that by copying and using the maps, which were created at great expense to Kern River, Wy–Cal obtained an expedited certificate enabling them to commence construction and sign customers that would have done business with Kern River. In addition to praying for damages, Kern River asked the court to impound the maps and Wy–Cal's certificate of public convenience and necessity and to enjoin Wy–Cal from using the maps for any purpose. In Count II, Kern River claimed that by "adopting" the Kern River Route, Wy–Cal had committed common-law misappropriation, gaining an unfair advantage in the race for Commission approval, rate-setting and solicitation of customers. The misappropriation count is not involved in this appeal.

Simultaneously with the filing of the complaint, Kern River moved for a temporary restraining order (TRO) under the Copyright Act to impound the copied maps and to enjoin Wy–Cal from using them for any purpose. The court granted the TRO. The court then held a hearing on Kern River's motion for a preliminary injunction after which it dissolved the TRO and denied the preliminary injunction. The court held that the large-scale maps represented the idea of the pipeline route and that the idea was inseparable from its expression; therefore these maps were not copyrightable. The court found, however, that the quad maps were copyrightable and that Wy–Cal had copied them. The court also found that Wy–Cal had copied Kern River's maps in April of *1989;* thus Kern River presented no evidence showing that the copying influenced the Commission's decision to grant Wy–Cal its certificate in March 1989. The court further determined that Kern River could suffer no harm unless it was required to alter its proposed route, thereby requiring additional EIS work and Commission approval, and unless Kern River was issued a certificate of public convenience and necessity under which it could commence construction. Thus, the court held Kern River had failed to prove a substantial threat of irreparable harm. Additionally, the court held that considering the "totality of the circumstances" Wy–Cal's use of the maps was fair use within the meaning of section 107 of the Act because Wy–Cal intended only to copy or adopt the Kern River route.

In December 1989, claiming there existed an irreconcilable conflict between our decision in *Plains Cotton Cooperative Ass'n v. Goodpasture Computer Service, Inc.,* 807 F.2d 1256 (5th Cir.1987), and the decision of the Supreme Court of the United States in *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), Kern River filed a petition in this court suggesting that we hear the

appeal en banc in the first instance. We denied this extraordinary request.

In January 1990 the Commission granted Kern River a certificate of public convenience and necessity.

## II

Kern River points out that the district court erred in finding no evidence connecting Wy–Cal's copying and the Commission's grant of a certificate to Wy–Cal, it being undisputed that Wy–Cal copied the maps in April of 1988, not 1989. Kern River also argues that under *Sony*, a court must presume the existence of a substantial threat of irreparable harm if it finds that copyrighted material has been copied. Kern River therefore urges that the district court erred in not presuming the existence of a threat of irreparable harm once it found that Wy–Cal had copied the quad maps. Finally, Kern River contends that the district court erred in finding fair use.

## III

Spirited competition among several pipeline companies to serve the burgeoning demand for natural gas among heavy oil producers conducting enhanced recovery in southern California drives the controversies between these pipelines. Their real battle is over which of them will serve this market. The merits of whether the Commission properly granted Wy–Cal its Optional Expedited Certificate, and whether the Commission should have consolidated the applications of Wy–Cal, Kern River, and Mojave and required them to go head-to-head for the right of one to serve, have been decided by the United States Court of Appeals for the District of Columbia Circuit. The court affirmed the Commission's decision in all respects. *Public Utilities Comm'n, supra*. This copyright claim is no more than a harassing skirmish by Kern River against Wy–Cal in the larger fight for domination of this southern California market. We express no opinion as to any issue that has been decided by or may later be presented to our sister circuit in that litigation.

The law controlling the issues raised here is well settled. A preliminary injunction may be granted under section 502 of the Copyright Act if the plaintiff establishes each of the following four factors: (1) a substantial likelihood that the plaintiff will succeed on the merits; (2) a substantial threat that the denial of the injunction will result in irreparable harm to the plaintiff; (3) the threatened injury to the plaintiff outweighs any damage that the injunction may cause to opposing parties; and (4) the injunction will not disserve the public interest. *Allied Mktg. Group, Inc. v. CD Mktg Inc.*, 878 F.2d 806, 809 (5th Cir.1989); *Apple Barrel Prod., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984). The preliminary injunction is an extraordinary remedy and will be granted only if the movant has clearly carried the burden as to all four of the elements. *Allied Mktg.*, 878 F.2d at 809; *Apple Barrel*, 730 F.2d at 389.

The decision to grant an injunction is within the sound discretion of the trial court. We may reverse only if the trial court has abused its discretion. *Allied Marketing*, 878 F.2d at 809. The district court's determinations as to each of the elements required for a preliminary injunction are mixed questions of fact and law, the facts of which we leave undisturbed unless clearly erroneous. *Apple Barrel*, 730 F.2d at 386. The conclusions of law are subject to broad, *de novo* review. *Id.*

The first issue for our consideration is whether Kern River will likely succeed on the merits. To state a prima facie case of copyright infringement, the plaintiff must prove ownership of copyrighted material and copying of that material by the defendant. *Allied Marketing*, 878 F.2d at 810; *Apple Barrel*, 730 F.2d at 387. "Ownership" is proved by establishing originality and copyrightability of the matter and compliance with statutory formalities. *Id.* at 810–11; *Apple Barrel*, 730 F.2d at 387. "Copying" may be shown by establishing that the defendant had access to the copyrighted material and that the defendant's work is substantially similar to the plaintiff's. *Id.* at 811.

The district court found that Kern River had created the lines locating its proposed pipeline route and properly registered the resulting quad maps, that the maps were copyrightable and that Wy–Cal had copied them. We agree that Kern River drafted the lines and properly registered the maps incorporating them, albeit after Wy–Cal copied the maps. However, the quad maps depicting the route are not subject to protection under the Copyright Act.

## A

■ The Copyright Act reflects a tension created by Congress in balancing divergent public policies. Section 102(a), on one hand, provides in pertinent part that

Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

. . . . .

(5) pictorial, graphic, and sculptural works....

17 U.S.C. § 102(a). Maps are included in the category of "pictorial, graphic, and sculptural works." *Id.* § 101. Section 102(b), on the other hand, provides that

*In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.*

*Id.* § 102(b) (emphasis supplied). Thus, protection is extended to an expression of an idea fixed in a tangible form, but not to the idea itself regardless of the form in which it is fixed. In drawing this fundamental distinction, Congress balanced the competing concerns of providing incentive to authors to create and of fostering competition in such creativity. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir.1983) (citing *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971)); *Sid &*

*Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir.1977).

Courts have often found it difficult to draw the line between an idea and its expression. In his oft-cited "abstractions test," Judge Learned Hand in an infringement action between a playwright and an allegedly infringing movie studio explained that the difference between an idea an its expression is often a matter of degree:

Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may, perhaps, be no more than the most general statement of what the play is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which, apart from their expression, his property is never extended. Nobody has ever been able to fix that boundary, and nobody ever can.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930) (citations omitted). "The guiding consideration in drawing the line [between an idea and its expression] is the preservation of the balance between competition and protection reflected in the patent and copyright laws." *Kalpakian*, 446 F.2d at 742.

■ The doctrine of "merger" developed in an effort to deal with this difficulty in locating the precise boundary between idea and expression. The doctrine holds that when the expression of an idea is inseparable from the idea itself, the expression and idea merge. "When the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law." *Id.* (citing *Baker v. Selden*, 101 U.S. 99, 103, 25 L.Ed. 841 (1880)).

■ Thus, the district court held that the idea of the location of the pipeline and its expression embodied in the 1:250,000

maps are inseparable and not subject to protection. We agree. The idea of the proposed location of a prospective pipeline is not copyrightable. The 1:250,000 maps consisted of lines representing the proposed location of the pipeline drawn on maps sold to the general public. Such map markings are certainly the only effective way to convey the idea of the proposed location of a pipeline across 1,000 miles of terrain. To extend protection to the lines would be to grant Kern River a monopoly of the idea for locating a proposed pipeline in the chosen corridor, a foreclosure of competition that Congress could not have intended to sanction through copyright law, especially given the ALJ's finding in the *Mojave–Kern River* proceedings that the southern California enhanced oil recovery market could support only one pipeline.

The quad maps, drawn on a scale of 1:24,000, do not differ from the larger-scale maps to such a degree that copyright protection should attach. They also consist of lines representing the proposed location of a pipeline on standard reference, publicly available maps. Only the scale differs. And, just as with the 1:250,000 maps, the lines Kern River created express in the only effective manner the idea of the pipeline's location. Kern River's principal planning engineer testified that he could think of no other way to portray the idea of the pipeline's proposed location. The Commission's environmental approval of the route proposed by Kern River was neither private nor exclusive. Rather, it extended similar environmental approval to any applicant otherwise qualified to build a pipeline within the approved corridor. Just as with the 1:250,000 maps, Kern River may not invoke the Copyright Act to monopolize this proposed location for a pipeline.

The district court did find that Kern River conducted expensive and detailed field work to acquire the information needed to formulate mile-by-mile the precise location of their pipeline. Clearly, the consequent placement of locating lines on the 1:24,000 maps met the originality requirement of the Act. The problem for the copyrightability of the resulting maps, however, is not a lack of originality, but rather that the

maps created express in the only effective way the idea of the location of the pipeline.

Kern River urges that the reasoning employed in *WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132 (D.D.C.1984) should control this case. We disagree. In *WPOW,* the plaintiff applied to the Federal Communications Commission to change its city of license and to build a transmitting antenna near the new city. 584 F.Supp. at 134. Included in its application was a detailed engineering report containing site coordinates, daytime and nighttime operating power, number of towers, tower height, tower line bearing, tower spacing, tower current ratios, and transmission pattern shape and size. *Id.* & n. 5. After the plaintiff had submitted its application, the defendant submitted a competing application containing an engineering report identical to the plaintiff's in several particulars. *Id.*

The plaintiff brought an action for infringement. The court did not analyze whether the engineering report was copyrightable. Instead, it focused its analysis on whether the defendant's use was fair under 17 U.S.C. § 107. The *WPOW* court had no need to analyze whether merger of idea and expression occurred. In addition to proposing the location of the tower, the copyrighted report described numerous variable and detailed specifications for its construction, configuration and method of operation. These expressions were clearly separate from the idea of where to construct a transmitting tower. Moreover, the *WPOW* court found that the engineering report's specifications concerning the broadcasting radiation pattern were chosen from "an almost infinite number" of alternatives. Thus, there was no danger that granting copyright protection to the report would create a monopoly over the "idea" of broadcasting in a particular manner from a particular location. In contrast, the Commission in the instant case at the time the copying occurred had approved only one EIS corridor through which a pipeline could be built without additional time-consuming and costly environmental study. To extend copyright protection to the quad maps

would grant Kern River a monopoly over the only approved pipeline route.

Since the quad maps in question are not copyrightable works, we need not reach the question whether Wy–Cal's use of the maps was fair use.

### B

█ Kern River failed to show a substantial likelihood of success on the merits of its case for copyright infringement as its maps are not copyrightable. We pretermit any decision on whether Kern River has met its burden on the remaining elements of a prima facie case for a preliminary injunction, and as to the merits of Kern River's misappropriation count against Wy–Cal and the other defendants.

### IV

The order of the district court denying the preliminary injunction is

AFFIRMED.