United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 17, 2003**

Charles R. Fulbruge III
Clerk

Revised July 14, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-11239

_____

GUY CARPENTER & COMPANY, INC.,

Plaintiff - Appellant,

v.

ANTHONY PROVENZALE,

Defendant - Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before WIENER and CLEMENT, Circuit Judges, and LITTLE,[*] District Judge.

EDITH BROWN CLEMENT, Circuit Judge:

## I. FACTS AND PROCEEDINGS

Anthony Provenzale ("Provenzale") began his career as a reinsurance broker in 1984.[1]

In 1993, Provenzale signed an employment agreement (the "1993 Agreement") with

Sedgwick Payne Co. The 1993 Agreement named Provenzale Senior Vice President-Branch

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

[1] Reinsurance refers to the practice of transferring all or part of the risk of one insurance contract to another contract issued by a different insurance company.

Manager, and contained a provision labeled "Non-Disclosure/Non-Competition." That provision included both non-disclosure and non-solicitation covenants:

> 6. <u>Non-Disclosure/Non-Competition</u>. Employee acknowledges that during the course of his employment, whether voluntarily or involuntarily, he will have access to confidential information, proprietary information and/or trade secrets. This information may include, without limitation, technical know-how; lists of clients or customers; contract terms and conditions; rates; loss statistics; financial information; methods of marketing; research activities and data; computer software and other aspects of the affairs and business operations of Employer (collectively referred to as "Confidential Information"). Employee agrees that all Confidential Information is the sole property of Employer, and its successors and assigns, and that both during and after the term of this Agreement no such information will be disclosed, except as may be required by law, to any person for any reason or purpose whatsoever, without the express prior written consent of Employer.
>
> Employee agrees that for a period of one (1) year after the termination of his employment, whether voluntary or involuntary, he will not directly or indirectly call upon, solicit, divert, accept, or take away from Employer any individual, account, customer, company, partnership or any other entity (collectively referred to as "Clients") to whom Employer rendered intermediary, consulting or broking [sic] services, either on a fee for services or commission basis, during the course of his employment with Employer.

In May or June 1999, Sedgwick Payne's successor merged with Guy Carpenter & Co., Inc. ("Guy Carpenter"). Presumably in conjunction with the impending merger with Guy Carpenter, the parties amended the employment agreement (the "1999 Agreement"). The changes included: (1) adding an arbitration provision (not implicated here); (2) amending the compensation and term-of-employment provisions of the 1993 Agreement; (3) and reducing Provenzale's severance in the event of a not-for-cause discharge, from an

2

automatic three years of salary to one year of salary if Provenzale were discharged prior to a specified date. The 1999 Agreement otherwise incorporated the terms of the 1993 Agreement, including the non-disclosure and non-solicitation covenants. Sedgwick paid Provenzale $35,000 to execute the 1999 Agreement.

On July 13, 2001, Provenzale voluntarily ended his employment with Guy Carpenter and began working for Benfield Blanch. On August 3, 2001, Guy Carpenter sued Provenzale, asserting breach of contract and misappropriation of trade secrets. Guy Carpenter alleged Provenzale began contacting and soliciting its clients in an attempt to get them to transfer their business to Benfield Blanch in violation of the 1999 Agreement's non-solicitation covenant. Provenzale admits soliciting clients. Guy Carpenter also alleged Provenzale disclosed its confidential and proprietary information in violation of the 1999 Agreement's non-disclosure covenant and of the common law duty to not misappropriate trade secrets.

The district court granted a temporary restraining order ("TRO") on September 5, 2001. The district court held a preliminary injunction hearing in early October and dissolved the TRO on October 19, 2001. The district court held Guy Carpenter did not have a substantial likelihood of success on its breach of contract claims because the non-competition covenants were unenforceable under Texas law, or on its misappropriation of trade secrets claim because it had not fully developed what constituted confidential information.

Guy Carpenter filed a motion for reconsideration which the district court denied almost a full year later, on September 30, 2002. Guy Carpenter appeals this interlocutory order

3

denying the motion to reconsider.[2] Provenzale responds to the merits of the appeal, and also argues the appeal is moot.

## II. STANDARD OF REVIEW

Mootness is a jurisdictional question, that this Court will determine de novo. North Carolina v. Rice, 404 U.S. 244, 246 (1971).

A district court's determinations as to each of the elements required for a preliminary injunction are mixed questions of fact and law, the facts of which this Court leaves undisturbed unless clearly erroneous. Kern River Gas Transmission, Co. v. Coastal Corp., 899 F.2d 1458, 1462 (5th Cir. 1990). Conclusions of law made with respect to the denial of a preliminary injunction are reviewed de novo. Id. The ultimate decision for or against issuing a preliminary injunction is reviewed under an abuse of discretion standard. Id.

The trial court's denial of the preliminary injunction was predicated on a determination that the non-competition covenant is unenforceable. This is a legal question, Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644 (Tex. 1994), that this Court reviews de novo. See, e.g., Blue Bell Bio-Medical v. Cin-bad, Inc., 864 F.2d 1253, 1256 (5th Cir. 1989).

## III. DISCUSSION

A.    Mootness

Provenzale argues that all questions regarding a preliminary injunction based on the

---

[2] The district court has a pending motion from Provenzale for summary judgment and a pending motion from Guy Carpenter for a stay of litigation pending a ruling from this Court.

4

non-solicitation claim are moot. To be cognizable in a federal court, a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character . . . ." Rice, 404 U.S. at 245-46. Provenzale's employment ended on July 13, 2001. By its own terms, the non-solicitation covenant expired one year later, on July 13, 2002. Provenzale argues that the relief Guy Carpenter seeks—enforcement of an expired non-solicitation agreement through an injunction—is not available under Texas law.

Guy Carpenter responds that injunctions are equitable in nature and that district courts may impose injunctions that last beyond a contract provision's expiration date. See, e.g., Premier Indus. Corp. v. Tex. Indus. Fastener Co., 450 F.2d 444, 448 (5th Cir. 1971) (applying Texas law and stating that "[an] argument that the trial judge exceeded his discretion by enjoining the appellants beyond the time specified in the . . . contract is without merit"). We agree with Guy Carpenter. The expiration of the one-year contract limit does not make this issue moot. If this Court remands, the district court has the power under Texas law to craft an injunction that extends beyond the expiration of the non-solicitation covenant. Exercising this equitable power might be particularly appropriate given the district court's year-long delay before ruling on the motion to reconsider.

We note that neither case Provenzale cites in support of his mootness argument is relevant to the facts of this case. See Hi-Line Electric Co. v. Dowco Electrical Products, 765 F.2d 1359, 1363 (5th Cir. 1985) (holding an appeal of injunction moot where the injunction

5

expired three months before the appellate court heard arguments in the case); John R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 85 (Tex. App. 1996) (finding that reforming (e.g., shortening) the length of a non-competition covenant would be an exercise in futility because the time limit in the sought-to-be-reformed covenant expired before the district court entered judgment).

B.      Substantive Arguments

Guy Carpenter seeks a preliminary injunction based on its contract claims for breach of the non-solicitation and non-disclosure covenants and on its common law tort claim for misappropriation of trade secrets.  In order to prevail on a motion for preliminary injunction, Guy Carpenter must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) there is a substantial threat it will suffer irreparable injury if the preliminary injunction is denied; (3) the threatened injury to Guy Carpenter outweighs the potential injury posed by the injunction to Provenzale; and (4) granting the preliminary injunction will not disserve the public interest.  Canal Authority of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1979).  A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements.  Kern River, 899 F.2d at 1462.

The district court concluded Guy Carpenter was not likely to succeed on the merits because the non-solicitation and the non-disclosure covenants were unenforceable.  The court also concluded Guy Carpenter was not likely to succeed on the merits of its misappropriation of trade secrets claim.

6

1.    Breach of Contract Claims

Texas has a statute governing the enforceability of covenants not to compete. It provides:

> § 15.50 Criteria for Enforceability of Covenants Not to Compete
>
> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE ANN. § 15.50 (Vernon 2002) (emphasis removed). As a preliminary matter, non-disclosure covenants do not restrain trade and competition in the same way that non-solicitation covenants restrain trade and competition. As a result, § 15.50 does not govern or impair the enforceability of non-disclosure covenants. See CRC-Evans Pipeline Intern., Inc., v. Myers, 927 S.W.2d 256 (Tex. App. 1996); Zep Mfg. Co. v. Harthcock, 824 S.W.2d 654 (Tex. App. 1992). The district court's assumption—that § 15.50 governs the enforceability of the non-disclosure covenant—erroneously tainted its conclusion that Guy Carpenter did not have a likelihood of success on the merits of this claim.

The Texas Supreme Court analyzed the requirements of § 15.50 in some detail in Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642 (Tex. 1994). The court wrote that "[s]ection 15.50 requires . . . two initial inquiries as to formation of the covenant not to compete: (1) is there an otherwise enforceable agreement, to which (2) the covenant not to compete is ancillary to or a part of at the time the agreement is made." Light, 883 S.W.2d at 644.

7

The 1999 Agreement satisfies Light's "otherwise enforceable agreement" test, which requires promises to be non-illusory. Id. at 644-46. Some of Guy Carpenter's promises, including the promises to pay a certain salary and a bonus, are illusory because they require continued employment to be fulfilled. However, Guy Carpenter also promised to pay a designated severance if it terminated Provenzale's contract before May 1, 2002, without "good cause."[3] Moreover, it paid Provenzale $35,000 to execute the 1999 Agreement. This payment was part of the bargain, even though reference to the $35,000 figure was kept out of the 1999 Agreement document at Guy Carpenter's request. See Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693 (Tex. App. 1999) (treating two separate documents as one where circumstances warranted). For his part, Provenzale agreed to, inter alia, mandatory arbitration, a reduction in severance, and the non-disclosure and non-solicitation covenants of the 1993 Agreement. Because both parties made non-illusory promises, the 1999 Agreement satisfies the "otherwise enforceable agreement" test.

The parties dispute whether the 1999 Agreement satisfies Light's "ancillary to or part of" requirement. See § 15.50 ("[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made.") (emphasis added). Light establishes a two-part test for satisfying the "ancillary to or part of" requirement:

---

[3] Provenzale contends this Court should not consider certain contract provisions, including the arbitration and severance provisions, in its analysis. Provenzale does not explain why these provisions should be ignored under this Court's de novo review of the contract's enforceability.

8

(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

(2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

883 S.W.2d at 647.

The arrangement between Guy Carpenter and Provenzale is the precise type of arrangement that the Texas Supreme Court believes satisfies this test:

[I]f an employer gives an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement because:

(1) the consideration given by the employer [the trade secrets] in the otherwise enforceable agreement [exchange of trade secrets for promise not to disclose] must give rise to the employer's interest in restraining the employee from competing [employer has interest in restraining employee with knowledge of employer's trade secrets from competing] and

(2) the covenant must be designed to enforce the employee's consideration or return promise [the promise not to disclose the trade secrets] in the otherwise enforceable agreement.

883 S.W.2d at 647 n. 14 (all but first alteration in original). This is precisely the relationship that the 1999 Agreement establishes. Guy Carpenter's promise to provide confidential information gives rise to its interest in restraining Provenzale from competing, and the non-solicitation covenant is designed to enforce Provenzale's non-disclosure covenant.

Provenzale argues Light supports his position that the non-solicitation covenant is unenforceable. To do so, Provenzale seizes language from a separate discussion in Light

considering the dangers of illusory promises in at-will employment contracts. See 883 S.W.2d at 644-46. Provenzale emphasizes the specific text of this contract: "Employee acknowledges that during the course of his employment, whether voluntary or involuntary, he will have access to confidential information, proprietary information and/or trade secrets." (emphasis added). Provenzale argues this is an illusory promise: had Guy Carpenter immediately terminated Provenzale's employment, Guy Carpenter would not have had a lingering promise to provide any information. Provenzale also believes Light implies that (1) the exchange of trade secrets for a non-solicitation covenant must itself be the "otherwise enforceable agreement" and (2) the promise to provide trade secrets must itself be non-illusory consideration. Id. at 647 n.14 ("[T]he consideration given by the employer [the trade secrets] in the otherwise enforceable agreement [exchange of trade secrets for promise not to disclose] must give rise to the employer's interest in restraining the employee from competing . . . .") (emphasis added).

Provenzale asserts that, because Guy Carpenter's promise to provide trade secrets is illusory for purposes of an analysis of contractual consideration, the agreement to exchange trade secrets for a non-solicitation covenant fails Light's "ancillary to or part of" test. We decline to adopt this construction of Light's "ancillary to or part of" test. Cf. Donahue v. Bowles, Troy, Donahue, Johnson, Inc., 949 S.W.2d 746, 755 (Tex. App. 1997) (Moseley, J., concurring) (basing criticism of Light on the premise that the consideration referred to in the "ancillary to or part of" test is measured by the same standards used to measure illusory promises). To hold otherwise would pin the enforceability of non-

10

solicitation agreements on whether an employer discloses confidential information at the time the employee signs an employment contract. This is not what Light, or § 15.50, intends or requires.

Because the non-solicitation covenant incorporated in the 1999 Agreement is enforceable, the district court erred as a matter of law by concluding the covenant's unenforceability precluded likely success on the merits. Denying a preliminary injunction on this basis was an abuse of discretion.

2.      Common Law Misappropriation of Trade Secrets Claim

To prevail on its claim for misappropriation of trade secrets, Guy Carpenter must show: (1) the existence of a trade secret; (2) a breach of a confidential relationship or improper discovery of the trade secret; and (3) use of the trade secret without authorization. See Phillips v. Frey, 20 F.3d 623, 627 (5th Cir. 1994).

The Texas Supreme Court defines a trade secret as "any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Hyde Corp. v. Huffines, 314 S.W.2d 763, 766 (Tex. 1958).

Guy Carpenter asserts it has confidential information, divided into thirteen categories, that qualifies for trade secret protection.[4] The district court analyzed the claim that Guy

---

[4] The categories are: (1) customer lists; (2) potential customers; (3) terms of existing contracts with customers, including renewal dates, premium information, loss information, credit issues, and reinsurance rates; (4) marketing methods; (5) analytic program structures; (6) research activities, data resources, and compilations; (7) reference manuals, training aids, and brochures; (8) specialized computer software; (9)

11

Carpenter's customer lists are trade secrets separately from the claim that the other twelve categories of information are trade secrets.

a.       Customer Lists

A customer list may be a trade secret, Hyde Corp., 314 S.W.2d at 766, but not all customer lists are trade secrets under Texas law. The broader rule of trade secrets, that they must be secret, applies to customer lists. A customer list of readily ascertainable names and addresses will not be protected as a trade secret. See Gaal v. BASF Wyandotte Corp., 533 S.W.2d 152, 155 (Tex. App. 1976). Thus, Texas courts consistently consider three factors when determining whether a customer list is a trade secret: (1) what steps, if any, an employer has taken to maintain the confidentiality of a customer list; (2) whether a departing employee acknowledges that the customer list is confidential; and (3) whether the content of the list is readily ascertainable. Compare Flake v. EGL Eagle Global Logistics, 2002 Tex. App. LEXIS 6593 at *10-11 (Tex. App. 2002) (finding trade secret where departing employee admitted information was confidential); Center for Economic Justice v. Am. Ins. Assoc., 39 S.W.3d 337, 246 (Tex. App. 2001) (affirming trade secret status of a quasi-customer list that insurance companies are required to submit to a Texas regulatory agency, even though the insurance companies only took measures to protect the confidentiality of the lists once they became aware of an "open-records request" to disclose the lists); Gibson, et al. v. Canfield, 2001 Tex. App. LEXIS 133 at *3-4 (Tex. App. 2001)

_____

loss statistics; (10) copyrighted material; (11) private financial information; (12) technical know-how; and (13) proprietary retention models, studies and actuarial analyses.

12

(finding district court did not abuse its discretion in granting an injunction in the face of conflicting testimony about whether an employer kept the list confidential—parties disputed whether two entities that received employer's customer list were employer's subcontractors or employer's competitors); Sauter, et al. v. The Comp Solutions Network, Inc., 1998 Tex. App. LEXIS 7248 at *13 (Tex. App. 1998) (finding a trade secret where employer testified a new entrant in this niche insurance market would initially book no, or almost no, policies within the first couple of weeks of business because the new entrant would have to determine which insurance agents participate in niche market, and where employer testified it took 30 years to compile a list of 1,200 agents); Keystone Life Ins. Co. v. Marketing Mgmt. Inc., 687 S.W.2d 89, 91 (Tex. App. 1985) (finding that a list of 900 names and addresses that were not generally available to persons in the business of selling group life insurance was a trade secret); with Bandit Messenger of Austin, Inc. v. Contreras, 2000-2 Trade Cas. (CCH) ¶ 73,109 (Tex. App. 2000) (finding no trade secret where employer did not show what specific steps were taken to maintain the confidentiality of the customer list); Numed, Inc. v. McNutt, 724 S.W.2d 432, 435 (Tex. App. 1987) (finding no trade secret where customer list can be compiled by calling hospitals and doctors and asking the identity of their supplier); Keystone Life, 687 S.W.2d 89, 94 (Guillot, J. dissenting) (arguing that a list of 900 names and addresses that was not generally available to persons in the business of selling group life insurance was not a trade secret because there was no evidence of the confidential nature of the customer list, no evidence that it was treated confidentially by the partners, and no evidence that the

13

employer told the employee to keep the list confidential).

Whether customer lists are trade secrets is a question of law reviewed de novo. Kern River Gas Transmission, Co. v. Coastal Corp., 899 F.2d 1458, 1462. The first two factors that a customer list is a trade secret are present in this case. First, the district court found, in reference to customer trade lists and other items, that Guy Carpenter had "taken reasonable precautions to prevent the unauthorized disclosure of such information." Second, Provenzale acknowledged the customer lists were confidential when he executed the 1993 Agreement. In regard to the third factor, the district court implicitly found the customer lists were readily ascertainable. We agree. Evidence in the record indicates participants in the reinsurance market freely disclose the identity of their reinsurance broker and the nature of the reinsurance products they regularly consume. See Numed, 724 S.W.2d at 435 (holding a customer list is readily ascertainable when businesses are willing to disclose identity of a supplier when contacted by telephone). We also note that Provenzale's list of customers was relatively short—it included only those companies he personally serviced while at Guy Carpenter. He could easily reconstitute this list even without the aid of a trade publication. Cf. Sauter, 1998 Tex. App. at *13 (finding a customer list was not readily ascertainable where customer list excluded non-participants in niche insurance market). Even though Guy Carpenter took steps to protect its customer list and Provenzale signed a contract stating the customer list was confidential, we conclude the customer list was not a trade secret because it was readily ascertainable.

Although Provenzale admits he used the customer list to solicit business on behalf of

Benfield Blanch, the district court correctly found Guy Carpenter did not have a likelihood of success on the merits of this claim because the customer list is not a trade secret.

b.      Remaining Twelve Categories of Information

The district court found Guy Carpenter had proven that the other twelve categories of confidential information qualified as trade secrets. The court held, however, that Guy Carpenter failed to satisfy either the second or third elements of its misappropriation claim because it failed to produce evidence Provenzale (1) breached a confidential relationship or (2) used Guy Carpenter's trade secrets.

Guy Carpenter asserts that a breach of the confidential relationship and the use of trade secrets should be inferred because it was probable that Provenzale would use the trade secrets. In Rugen v. Interactive Bus. Sys., 864 S.W.2d 548, 552 (Tex.App. 1993), the court inferred that a former employee's possession of a trade secret and employment by a competitor, where the former employee operated the competitor, made it probable that the former employee would use the trade secrets for her benefit to the detriment of the former employer. See also T-N-T Motorsports, 965 S.W.2d at 21-22. Provenzale responds that there is no reason to infer he would use Guy Carpenter's trade secrets for four reasons: (1) Provenzale testified he had not taken any confidential information with him; (2) Guy Carpenter admitted that employees it had hired away from Benfield Blanch were able to service customers without using their former employer's confidential information; (3) insofar as Guy Carpenter's trade secrets covered analytic output of proprietary software, Provenzale went to work for a competitor that had its own analytic tools already in place;

15

and (4) the terrorist attacks on September 11, 2001, completely altered the reinsurance market, such that any confidential information Provenzale might have left with in July 2001 is completely out-of-date.

The district court's conclusion that success on the merits was unlikely is supported by the four points raised by Provenzale. In the face of imprecise claims and undeveloped evidence from Guy Carpenter, the district court did not abuse its discretion in denying a preliminary injunction on Guy Carpenter's misappropriation of trade secrets claim as it relates to the twelve groups of trade secrets.

## IV. CONCLUSION

In denying Guy Carpenter's motion for a preliminary injunction, the district court rested its decision on the first of four factors governing preliminary injunctions—that Guy Carpenter was not likely to succeed on the merits. We reverse the district court's determinations that the non-disclosure and non-solicitation covenants are unenforceable and hold that Guy Carpenter demonstrated a likelihood of success on the merits of its claims for (1) breach of the non-solicitation covenant and (2) breach of the non-disclosure covenant. We affirm the district court's determination that Guy Carpenter did not demonstrate a likelihood of success on the merits of its misappropriation of trade secrets claim, based on either Provenzale's customer list or the twelve other categories of information. We remand for the district court to apply the other three factors governing preliminary injunctions without regard to the lapse of time since Provenzale voluntarily terminated his own employment, and ultimately for a trial on the merits.

16

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART and REMAND.