**FREE MARKET FOUNDATION,**
**et al., Plaintiffs,**

v.

**David A. REISMAN, et al., Defendants.**

**No. A–08–CA–116–SS.**

United States District Court,
W.D. Texas,
Austin Division.

Feb. 26, 2008.

James C. Ho, Lawrence J.C. VanDyke, Gavin S. Martinson, Gibson, Dunn & Crutcher LLP, Dallas, TX, Hiram S. Sasser, III, of counsel, Liberty Legal Institute, Plano, TX, Lisa Graybill, of counsel, ACLU Foundation of Texas, Austin, TX, for Plaintiffs.

Greg Abbott, Kent C. Sullivan, David S. Morales, Robert B. O'Keefe, James B. Eccles, Office of the Attorney General, Austin, TX, for Defendants.

Robert J. Davis, Matthews, Stein, Shiels, Pearce, Knott, Eden & Davis, L.L.P., Dallas, TX, for John Roach.

## ORDER GRANTING PRELIMINARY INJUNCTION

LEE YEAKEL, District Judge.

BE IT REMEMBERED that on the 26th day of February, 2008, the Court held a hearing in the above-styled cause and the parties appeared through counsel. Before the Court were Plaintiffs' Motion for Preliminary Injunction [# 3], Defendants' Response thereto [# 32], and Plaintiffs' Reply in Support of the Motion for Preliminary Injunction [# 33]. Having considered these documents, the arguments of counsel at the hearing, the applicable law, and the case file as a whole, the Court GRANTS the motion for preliminary injunctive relief for the reasons that follow.

### Background

In 1972, the Speaker of the Texas House of Representatives, Gus Mutscher, Jr., was convicted of conspiracy to accept a bribe in exchange for using his influence to pass certain legislation. *See Mutscher v. State,* 514 S.W.2d 905, 909 (Tex.Crim.App.1974), for a discussion of the events surrounding Mutscher's conviction. In the wake of the "Sharpstown scandal," as the conspiracy came to be known, the Texas legislature passed a series of laws intended to prevent such corruption in the future. Among the reform bills were certain campaign finance restrictions related to the selection of the Speaker. Texas Government Code Sections 302.17 and 302.019 are two of these measures.

These statutes have gone unchallenged since they were enacted in 1973. In the current election year, however, several groups and individuals assert the restrictions on campaign finance related to Speaker elections violate the First Amendment. Plaintiffs Kelly Shackleford, David Broiles, the Free Market Foundation, the American Civil Liberties Union of Texas, and the Texas Eagle Forum PAC seek to enjoin the enforcement of Texas Government Code Sections 302.17 and 302.019 alleging the statutes are unconstitutionally overbroad. Plaintiffs sue David Reisman, Raymond Davenport, III, Wilhelmina Delco, Ross Fischer, Jim Graham, Tom Harrison, Paula Mendoza, David Montagne, Nicholas C. Taylor, and John Roach in their respective official capacities as representatives of the Texas Ethics Commission, the District Attorney for Collin County, and "the class of District and County Attorneys in the State of Texas." Mot. Prel. Inj. at 1. The Texas Ethics Commission is the entity responsible for overseeing the campaign finance rules of Chapter 302. *See* TEX. GOV'T CODE § 302.013. The District and County Attorneys are responsible for prosecuting offenses under this Chapter as Class A misdemeanors. TEX. GOV'T CODE § 302.021.

Texas Government Code Section 302.17, titled "Contributions and Loans from Organizations," states:

(a) Except as provided by Subsection (b), a corporation, partnership, association, firm, union, foundation, committee, club, or other organization or group of persons may not contribute or lend or promise to contribute or lend money or other things of value to a speaker candidate or to any other person, directly or indirectly, to aid or defeat the election of a speaker candidate.

(b) This section does not apply to a loan made in the due course of business to a speaker candidate for campaign purposes by a corporation that is legally engaged in the business of lending money and that has continuously conducted the business for more than one year before making the loan to the speaker candidate.

Plaintiffs assert this broadly worded statute effectively "prohibits *any* coordinated activity by two or more persons designed to influence a Speaker election," whether in the form of campaign contributions or independent expenditures. Mot. Prel. Inj. at 5. In particular, Plaintiffs assert the statute's ban on contributions to the speaker candidate or *any other person* not only prohibits direct campaign contributions, but also prohibits independent political activity by organizations, such as "a coordinated call campaign to lobby legislators to vote for a particular candidate for Speaker" or "printing information guides on the candidates for Speaker and distributing those guides to the general public or to other legislators," because these activities would involve paying the phone company or the printing company for services intended to influence the election of the Speaker. *Id.*

Texas Government Code Section 302.19, titled "Individual Contributions; Campaign Expenditures" sets out what an individual acting alone may do to influence the election for Speaker.

(a) Except as provided by Section 302.017 [prohibiting organizational contributions as set out above] or 302.018 [prohibiting contributions from any elected officer or employee of the executive or judicial branches of state government], an individual other than the speaker candidate may contribute personal services and traveling expenses to aid or defeat a speaker candidate.

(b) An individual other than the speaker candidate may expend a total of not more than $100 for the cost of correspondence to aid or defeat the election of a speaker candidate.

(c) Except as provided by Subsections (a) and (b), all campaign expenditures must be made by the speaker candidate from campaign funds.

Plaintiffs assert these regulations have the effect of allowing unlimited individual contributions to a Speaker candidate's campaign, but prohibiting any individual who is not a candidate for Speaker from making independent expenditures (other than "$100 for the cost of correspondence") regarding the Speaker election. Mot. Prel. Inj. at 8 citing Tex. Atty Gen. Op. H–55 at 3 (1973) (opining that "individuals may contribute" under Section 302.019).

Defendants do not dispute Plaintiffs' interpretation of these statutes, but argue the statutes are limited by Texas Government Code Section 302.001. This statute, titled "Election," states "When the House of representatives first convenes in regular session and a quorum is present and has been qualified, the House shall elect a speaker unless a majority of the members present decides to defer the election." On its face, this provision simply establishes the conditions under which the Speaker election will take place. At the hearing, however, counsel for Defendants argued this statute implies a substantive limitation on the scope of Sections 302.017 and

302.019 by defining the term "election" as it is used in these statutes. According to Defendants, the term "election of a speaker candidate" as used in Sections 302.017 and 302.019 refers only to the internal election described in Section 302.001. Therefore, attempts to influence a primary election or a general election by referring to the Speaker's election, Defendants argue, are qualitatively different from attempts to influence the Speaker's election itself and are generally outside the scope of the challenged statutes.

Defendants further argue Sections 302.017 and 302.019 serve a compelling government interest in preventing corruption and creating transparency by "effectively removing external, anonymous monetary influences from the House members' internal vote." *Id.* at 10. Defendants assert the limitations are not overbroad because, as set forth in Section 302.001, the election of the Speaker is "an internal vote by the 150 members of the House of Representatives," not a general election by the voting public. Resp. at 9. General elections are subject to much more liberal campaign finance rules found in Title 15 of the Texas Election Code. *Id.* at 6–8. Because the election of the Speaker is a "an internal legislative affair, not a general election," Defendants argue these regulations fall within the legislature's "substantial discretion over its own affairs." *Id.* at 9.

Plaintiffs dispute that Section 302.001 provides any meaningful limitation on Sections 302.017 and 302.019. First, Plaintiffs argue the plain terms of Sections 302.017 and 302.019 contain no explicit temporal limit and apply broadly to contributions and expenditures for a "speaker candidate." At the hearing, Plaintiffs asserted there are seven declared speaker candidates at the present time, and therefore there is every possibility that political speech regarding these candidates could

fall within the scope of the challenged statutes even in the context of the primary or general elections.

Plaintiffs further object that Section 302.001 does not render the Speaker election an "internal matter" in a sense that should insulate it from public debate. Although it is true the general public does not vote for the Speaker, the general public does not cast a vote on any other issue before the legislature either. Plaintiffs assert there is no principled distinction between lobbying with regard to the Speaker election and lobbying for or against a bill pending before the legislature. Reply at 4. Finally, Plaintiffs argue "the criminalization of all speech related to the Speaker's race cannot possibly be narrowly tailored to rooting out corruption, when as [the Texas Election Commission] itself boasts, the Election Code 'imposes *no* dollar limits on the campaign contributions an individual [or political committee] may make to a candidate for the House.'" Reply at 3 (quoting Resp. at 6–7).

Plaintiffs seek a preliminary injunction preventing Defendants from enforcing Texas Government Code Sections 302.17 and 302.19. Plaintiffs assert immediate injunctive relief is necessary because they wish to engage in speech that is intended to persuade Texans to take into account a candidate's expected position on the Speaker election when voting in the upcoming March 4, 2008 primary election.

### Analysis

■ For the Court to issue a preliminary injunction, Plaintiffs must prove: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to Plaintiff outweighs the injury to Defendant; and (4) granting the injunction does not disserve the public interest. *Planned Parenthood v. Sanchez,* 403 F.3d 324, 329 (5th Cir.

2005); *Guy Carpenter & Co. v. Provenzale,* 334 F.3d 459, 464 (5th Cir.2003). Because a preliminary injunction is an extraordinary remedy, a court may grant a preliminary injunction only when the moving party makes a clear showing of these four factors. *Carpenter,* 334 F.3d at 464. At the same time, a preliminary injunction hearing is not a trial on the merits, and the Court expressly limits today's decision to the issue of whether preliminary relief is appropriate in this case. *See Univ. Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

## I. Likelihood of success on the merits

■ The Court finds Plaintiffs have a high likelihood of success on the merits of their claims that Sections 302.017 and 302.019 violate their rights under the First Amendment. The Supreme Court has established that contribution limits "impinge on the protected freedoms of expression and association." *McConnell v. FEC,* 540 U.S. 93, 231, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (citing *Buckley v. Valeo,* 424 U.S. 1, 20–22, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). Contribution limits imposed on groups can be especially problematic when they "severely inhibit collective political activity by preventing [a group] from using contributions by small donors to provide meaningful assistance to any individual candidate." *Randall v. Sorrell,* 548 U.S. 230, 126 S.Ct. 2479, 2497, 165 L.Ed.2d 482 (2006) (Breyer, J., plurality). Therefore, to pass constitutional muster, the Government must demonstrate that "a contribution limit involving 'significant interference' with associational rights … [is] 'closely drawn' to match a 'sufficiently important interest.'" *Nixon v. Shrink Mo. Gov't PAC,* 528 U.S. 377, 388, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (quoting *Buckley,* 424 U.S. at 25, 96 S.Ct. 612).

■ The Supreme Court has "subjected restrictions on campaign expenditures to [even] closer scrutiny than limits on campaign contributions." *McConnell,* 540 U.S. at 135, 124 S.Ct. 619 (citing *FEC v. Beaumont,* 539 U.S. 146, 161–62, 123 S.Ct. 2200, 156 L.Ed.2d 179 (2003); *Nixon,* 528 U.S. at 387–388, 120 S.Ct. 897; *Buckley,* 424 U.S. at 19, 96 S.Ct. 612). "Independent expenditures constitute expression 'at the core of our electoral process and of the First Amendment freedoms.'" *Fed. Election Com. v. Mass. Citizens for Life, Inc.,* 479 U.S. 238, 251, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (quoting *Buckley,* 424 U.S., at 39, 96 S.Ct. 612). Accordingly, restrictions on independent expenditures that burden political speech must be narrowly tailored to support a "compelling state interest." *Id.*

■ Though Defendants have identified an important, even compelling governmental interest in combating corruption in the election of the House Speaker, the record currently before the Court suggests the limitations of Sections 302.017 and 302.019 are not appropriately tailored to balance that interest against Plaintiffs' constitutional rights. Defendants' argument that the "internal" character of the Speaker election makes the restrictions appropriately narrow is unavailing; as Plaintiffs point out, the Speaker of the Texas House of Representatives is "one of the most powerful and influential political figures in the state, vested with the responsibility of overseeing the course of lawmaking in every possible area of interest to any Texan." Mot. Prel. Inj. at 1. The election of the Speaker is not, therefore, a matter of internal Housekeeping. It is an issue of great political importance and a legitimate subject of public debate. Therefore, public speech relating to the election of the Speaker is subject to all the protections of the First Amendment.

Defendants, relying on Section 302.001's description of the Speaker's election, argue

the challenged statutes are limited in their application to the internal election itself and do not restrict advocacy regarding candidates in the primary or general elections. The Court notes, however, that Section 302.001 is not a definition of the term "election" as used in Chapter 302. It is merely a description of the process for conducting the Speaker's election. The term "election" is not defined in the Chapter. Chapter 302 defines only three terms: "speaker candidate," "campaign expenditure," and "campaign funds." Tex. Gov't Code § 302.011. " 'Speaker candidate' means a member of or candidate for the House of representatives who has announced his candidacy for or who by his actions, words, or deeds seeks election to the office of speaker of the House of representatives." *Id.* " 'Campaign expenditure' means the expenditure of money or the use of services or any other thing of value to aid or defeat the election of a speaker candidate." *Id.* " 'Campaign funds' means the speaker candidate's personal funds that are devoted to the campaign for speaker and any money, services, or other things of value that are contributed or loaned to the speaker candidate for use in the candidate's campaign for speaker." *Id.* In light of these broad definitions, the Court finds it by no means clear that the restrictions of Sections 302.017 and 302.019 are necessarily limited to the election described in Section 302.001. Particularly in light of the fact that, under Section 302.011, a "speaker candidate" includes not only members of the House of representatives, but also candidates for the House, it seems reasonable to suppose that restrictions on contributions and expenditures to influence "the election of a speaker candidate" might extend to the primary and general election context.

Moreover, the Court is by no means confident that the challenged statutes are constitutional even if they are restricted to the Speaker election and have no applica-

tion in the general election context. Section 302.017 categorically denies organizations and groups the ability to make both contributions and independent expenditures to influence the election for Speaker. The Supreme Court has "routinely struck down limitations on independent expenditures," *FEC v. Colo. Republican Fed. Campaign Comm.,* 533 U.S. 431, 441, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001) (collecting cases), and in cases where the Court has allowed a limit on campaign contributions to stand, it has relied in part on the fact that independent expenditures remained available as an alternative means of political expression. *Buckley,* 424 U.S. at 28, 96 S.Ct. 612. *See also McConnell,* 540 U.S. at 135–36, 124 S.Ct. 619; *Nixon,* 528 U.S. at 401, 120 S.Ct. 897 (Breyer, J., concurring) (upholding statute because it did not "prevent the contributor from using money (alone or with others) to pay for the expression of the same views in other ways.") This case law suggests it is highly unlikely that a complete ban on *both* campaign contributions *and* independent expenditures by groups would be constitutionally permissible.

Section 302.019 forbids individuals from making any independent expenditures to influence the election for Speaker, with only two narrow exceptions: (1) up to $100 for correspondence, and (2) personal time and labor. As Plaintiffs point out, the $100 cap, which is limited to "correspondence" purposes, would allow an individual to post only 243 letters regarding the Speaker election, though a single House district is comprised of approximately 130,-000 people. Mot. Prel. Inj. at 18. These limitations effectively "exclude all citizens … from any significant use of the most effective modes of communication." *Buckley,* 424 U.S. at 13, 19–20, 96 S.Ct. 612.

Section 302.019 permits individuals to speak through Speaker candidates

by contributing to their campaigns. Such "speech by proxy," however, "run[s] afoul of 'the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.'" *FEC v. Wis. Right to Life, Inc.,* —— U.S. ——, —— n. 9, 127 S.Ct. 2652, 2671 n. 9, 168 L.Ed.2d 329 (2007) (Roberts, C.J., plurality) (quoting *Hurley v. Irish–American Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995)). Section 302.019 effectively requires individuals to associate themselves with one or more Speaker candidates if they want to speak about the election for Speaker. Plaintiffs assert "many Texans may wish to engage in speech about the Speaker's election that no candidate for Speaker would agree with." Mot. Prel. Inj. at 19. Therefore, such "forced associations that burden protected speech are impermissible." *Pacific Gas & Elec. Co. v. Public Util. Comm'n,* 475 U.S. 1, 12, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986).

Moreover, to the extent Section 302.019 allows "unlimited individual contributions," as Plaintiffs suggest, it may well present a constitutional violation in and of itself. Plaintiffs assert Section 302.019 allows a wealthy individual to make unlimited contributions to Speaker candidates, while Section 302.017 prevents a group of two or more individuals from pooling even one dollar in support of a Speaker candidate. The Supreme Court has recognized that ordinary citizens of "modest means" often must "pool[ ] their resources to amplify their voices," *NCPAC,* 470 U.S. at 495, 105 S.Ct. 1459. Whether or not the statutes' different treatment of large individual contributions and smaller, pooled contributions amounts to a violation of the Equal Protection Clause, as Plaintiffs suggest, it certainly undermines Defendants' argument that these rules are tailored to prevent corruption or the appearance of corruption. "Large financial contributions" are the *sine qua non* of corruption in campaign finance, *McConnell,* 540 U.S. at 136, 124 S.Ct. 619, but Sections 302.017 and 302.019 potentially have the cumulative effect of encouraging large individual "buyouts" of Speaker campaigns while prohibiting smaller individual contributions through political action groups or other organizations.

The record currently before the Court strongly suggests that Sections 302.017 and 302.019 are overbroad and impermissibly infringe on Plaintiffs' First Amendment Rights. Therefore, Plaintiffs have carried their burden of establishing a substantial likelihood of success on the merits.

## II. Threat of irreparable harm

■ Plaintiffs have not only demonstrated a likelihood of success on the merits, but have also established a substantial likelihood of irreparable harm if preliminary injunctive relief is not granted. The primary elections will take place on March 4, 2008. Plaintiffs wish to advocate for and against potential candidates for the Texas House of Representatives on the basis of their expected positions on the election for House Speaker. Even without this looming practical deadline, both the Supreme Court and the Fifth Circuit have held that the "[l]oss of First Amendment freedoms, even for minimal periods of time, constitute[s] irreparable injury." *Ingebretsen v. Jackson Pub. Sch. Dist.,* 88 F.3d 274, 280 (5th Cir.1996) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

## III. Balance of harms

■ The balance of harms tips sharply in Plaintiffs' favor. Defendants have indicated that the State has no interest in prosecuting alleged violations of the challenged statutes until their constitutionality is established. *See* Defendant John

Roach's Mot. Dismiss, Ex. A. In fact, at the hearing, Defendants argued that the challenged statutes are generally limited in effect by Section 302.001 to the period immediately preceding the Speaker's election, after the primary and general elections are complete, and are not even "in play" in the context of electing representatives to the Texas House. Moreover, to the extent Defendants have identified a legitimate governmental interest in preventing corruption in the election of the Texas Speaker, that interest is appropriately served by the reporting requirements of Texas Government Code Sections 302.013 and 302.014, which are not challenged here. Although Defendants' legitimate interests can be protected by the reporting statutes if preliminary injunctive relief is granted, Plaintiffs will irrevocably lose their opportunity for political debate on the Speaker's election in the context of the upcoming primaries if preliminary injunctive relief is denied.

## IV. Public interest

The timing of the upcoming primary election renders the public interest in preliminary injunctive relief "especially immediate" in this case. Mot. Prel. Inj. at 21. "[A] government's constituents have a vested interest in their government enacting constitutionally sound laws." *Laredo Rd. Co. v. Maverick County, Tex.,* 389 F.Supp.2d 729, 748 (W.D.Tex.2005). Because it appears that Plaintiffs are likely to prevail on their constitutional challenges to Sections 302.017 and 302.019, the public interest in free speech regarding candidates for public office will be best served by granting preliminary relief.

## V. Security

Finally, as there will be no monetary or other damages to any Defendant if a preliminary injunction is granted and later dissolved, the Court finds no bond is necessary. *See Kaepa, Inc. v. Achilles Corp.,*

76 F.3d 624, 628 (5th Cir.1996) (citing *Corrigan Dispatch Co. v. Casa Guzman,* 569 F.2d 300, 303 (5th Cir.1978)).

### Conclusion

In accordance with the foregoing,

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction [# 3] is GRANTED. Defendants are hereby restrained and enjoined from taking any action to enforce Texas Government Code Sections 302.017 and 302.019 during the pendency of this action.

IT IS FURTHER ORDERED that no bond other security be posted by Plaintiffs.