# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2009

No. 08-60648

Charles R. Fulbruge III
Clerk

BLUEFIELD WATER ASSOCIATION INC., A Mississippi Non-Profit Corporation,

Plaintiff-Appellee

v.

CITY OF STARKVILLE MISSISSIPPI, A Municipal Corporation,

Defendant-Appellant

--------------------------------------------------------------------------

TEXAS RURAL WATER ASSOCIATION,

Amicus Curiae

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and HIGGINBOTHAM, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This dispute over water provision emerges from a grant of preliminary injunctive relief to plaintiff-appellee Bluefield Water Association by the United District Court of the Eastern District of Mississippi, requiring defendant-appellant, the City of Starkville, to change its main pipe interface with Bluefield

and to turn over its customers in a disputed area to Bluefield on terms specified by the court. We affirm in part and reverse in part.

I

The Mississippi Public Service Commission authorized ("certificated") Bluefield Water Association, which was incorporated as a non-profit water association in 1965, to provide water services in a designated area of Oktibbeha County, Mississippi. The Farmers Home Administration, a federal agency later subsumed into the Rural Development office of the Department of Agriculture, loaned Bluefield money for its startup and operation. Bluefield's certificated service area comprised some land near the city of Starkville, Mississippi. Pursuant to a 1986 Water Purchase Contract, Starkville supplies Bluefield's water, which Bluefield distributes to its customers in what we call the "western service area."

As it grew, and apparently beginning in the mid-1990's, Starkville provided water service for some residents and businesses in Bluefield's area, without complaint. Because these customers are located in the eastern part of Bluefield's service area, we refer to this contested area as the "eastern service area."[1] In 2004, negotiations commenced for the acquisition of the reportedly financially troubled Bluefield by Starkville. Bluefield noted—apparently as a bid to raise its selling price—that Starkville's provision of water in the eastern service area violated Bluefield's exclusive right to provide water within its certificated area. In late 2007, citing shortage of water to supply its customers,

---

[1] The eastern service area service area generally falls to the east of the north-south Highway 25 Bypass, but the record suggests this dividing line is not clean. We define this area as that land within Bluefield's certificated area currently served by Starkville.

Bluefield requested that the city allow it to access a 12-inch pipe in lieu of the 8-inch pipe with 6-inch connector. The city refused.

With negotiations at a standstill, Bluefield filed a complaint in the United States District Court on March 17, 2008, and on May 8 of that year requested a preliminary injunction with two distinct facets. First, it invoked federal law protecting rural utility providers indebted to Department of Agriculture, providing in part that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body . . . ."[2] Alleging that Starkville's encroachment violates this provision, Bluefield asked the court to provide immediate relief from the eastern service area encroachment, pursuant to one of several proposed remedies. Second, invoking supplemental jurisdiction, Bluefield asked for the court to enforce its contract with the city by ordering connection to a larger water main in Starkville's system. It argued that Starkville's refusal to do so left its customers vulnerable to disastrous financial and public health consequences in case of disruptive events such as flooding.

On July 9, 2008, the district court granted broad relief on both facets. Its preliminary injunction ordered Starkville to connect Bluefield to a larger main and to turn over to Bluefield the billing apparatus of its water service in the

---

[2] 7 U.S.C. § 1926(b). "All of the courts that have reviewed § 1926(b) acknowledge that is provisions should be given a liberal interpretation that protects water associations indebted to the [Farmers Home Administration] from municipal encroachment." *Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 972 F. Supp. 951, 959 (E.D.N.C. 1997).

eastern service area, while continuing to provide water as before, with Bluefield billing the customers formerly billed by Starkville.[3] Starkville timely appealed.

II

The conditions of preliminary injunctive relief guide, indeed largely dictate, our decision in this case. "To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. We have cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements."[4]

Our review is deferential: "A district court's determination as to each of the elements required for a preliminary injunction are mixed questions of fact and law, the facts of which this Court leaves undisturbed unless clearly erroneous. Conclusions of law made with respect to denial of a preliminary

---

[3] "Starkville shall immediately designate Bluefield as the customer of Starkville at each such water meter where Starkville has heretofore been furnishing retail water service to customers within Bluefield's service area through meters owned by Starkville. . . . Starkville shall bill Bluefield at its water rates presently charged to customers at each meter. Then Bluefield shall pay Starkville for services rendered to it and may bill the customers previously served by Starkville at Bluefield's existing retail rates . . . ." The injunction also prohibits Starkville from serving new customers or setting new meters or mains in the eastern service area. These parts of the injunction have not been appealed so we do not pass judgment on them, although the district court may choose to fashion relief on these scores as appropriate.

[4] *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003).

injunction are reviewed *de novo*. The ultimate decision for or against issuing a preliminary injunction is reviewed under an abuse of discretion standard."[5]

We are convinced that the district court erred as to one wing of the granted injunctive relief, namely requiring Starkville to turn over billing and customer relations to Bluefield. There is nothing to suggest that harm suffered between the time of suit and the time of ultimate decision in this case would seriously prejudice Bluefield's opportunity for full recovery, so there is no irreparable injury—in traditional terms of equity, the remedy at law is adequate. That is, any harm is financial, and monetary compensation will make Bluefield whole if Bluefield prevails on the merits. True, courts have granted injunctive relief to protect rural providers' interest in serving their certificated areas,[6] and the grant of relief to allow Bluefield's to serve the eastern service area may ultimately be appropriate here. But at this stage in the proceedings, given the long service by Starkville of these customers with no complaint from Bluefield, and the lack of irreparable harm to Bluefield, granting this preliminary relief was an abuse of discretion.

By contrast, we are persuaded that the district court acted within its discretion to require Starkville to supply water to Bluefield via a 12-inch main. The district court rightly credited the argument that the risk of an overload to Bluefield's water supply could seriously damage both Bluefield's and the public's interest, and contrary to Starkville's strenuous objections, there is at least a

---

[5] *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003) (internal citations omitted).

[6] *See North Alamo Water Supply Corp. v. City of San Juan, Texas*, 90 F.3d 910, 916-18 (5th Cir. 1996).

"substantial likelihood" that Bluefield's ultimate claim under the Water Purchase Contract will prevail.[7]

Having reached these conclusions, we decline to explore the parties' manifold additional claims and arguments, ranging from federal jurisdiction to the interpretation of the Farm and Rural Development Act to the application of the doctrine of laches. The undeveloped record provides no occasion to decide these disputes, and we leave them for development by the district court. Federal jurisdiction, including supplementary jurisdiction over the state law contract dispute, on this record has been sufficiently invoked for the purposes of this ruling.[8]

We AFFIRM the district court's preliminary injunction insofar as it requires Starkville to supply water via a 12-inch pipe, we REVERSE the injunction insofar as it requires altered billing and payment structures to the Starkville customers in the eastern service area, and we REMAND this case for further proceedings.

---

[7] The contract includes the following language: "the Seller will, at all times, operate and maintain its system in an efficient manner and will take such actions as necessary to furnish the Purchaser with quantities of water required by the Purchaser." This is sufficient to support Bluefield's claim, to at least a "substantial likelihood" standard. We express no opinion as to the ultimate outcome of this dispute.

[8] "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (*quoting United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 725 (1966)). The district court may examine again the question of supplementary jurisdiction and whether it ought exercise it as the federal and state claims gain focus with the progress of the case.