**BOND PHARMACY, INCORPORATED, Doing Business as Advanced Infusion Solutions, Plaintiff**

v.

**ANAZAOHEALTH CORPORATION, Defendant.**

Cause No. 3:11–CV–00058–CWR–FKB.

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 11, 2011.

Walker W. Jones, III, David Wesley Mockbee, Jeffrey Scott Newton, W. Scott Welch, III, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, for Plaintiff.

John Adam Crawford, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, Charles E. Griffin, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Ridgeland, MS, Susan B. Morrison–Phv, Law Offices of Susan B. Morrison, Tampa, FL, for Defendant.

## ORDER DENYING PRELIMINARY INJUNCTION

CARLTON W. REEVES, District Judge.

The above-styled cause is before the Court on the Plaintiff's motion for a preliminary injunction. After having considered the parties' pleadings, briefs, exhibits, testimony, and arguments, the Court finds that the motion should be and hereby is denied.

### FACTS

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact.

Advanced Infusion Solutions (hereinafter "AIS") and AnazaoHealth Corporation (hereinafter "Anazao") are competitors in the marketplace of compounded pharmaceuticals. AIS operates by creating customized mixtures of pain medication and selling them to patients, who ingest the formulas by use of surgically implanted, programmable pump devices (Durable Medical Equipment). Frequently, AIS serves customers who are insured by Medicare.

AIS and Anazao have different business models. When a physician orders a compound from Anazao, the company bills the doctor for its costs, after which the doctor awaits reimbursement from Medicare as he has represented to Medicare that the drugs are furnished "incident to" a physician service. *See* Exhibit A to Defendant's

Response in Opposition [8–1] (Affidavit of Jacob Beckel).

Chuck Bell, the president and CEO of AIS, testified at the hearing on his company's motion that he believes AIS is not obligated to this process. When his company receives an order, AIS ships the compound to the patient's physician, and the doctor (or a member of her staff) injects the medicine into the patient's surgically implanted device. AIS then directly bills the insurance carrier, which relieves the physician from the obligations of paying for the product and waiting for reimbursement.

Anazao believes that this practice violates billing guidelines promulgated by the Centers for Medicare and Medicaid Services (hereinafter "CMS"). Anazao argues that CMS does not permit pharmacies to bill Medicare (or any private insurance carrier) directly for pain medication provided to physicians for administration to patients incident to the physicians' office procedures. According to Anazao, "CMS Medicare billing guidelines require that the physician 'bundle' the cost of the medication in with the office visit charge and the pump calibration, fill and administration charges, and that only the physician *and not the pharmacy* could bill for practitioner administered medications." Defendant's Memorandum in Opposition [Docket No. 9] at 7 (emphasis included). AIS disputes this view of CMS guidelines. The dispute regarding these interpretations and the ensuing actions taken by the parties culminated in the filing of this action.

On January 18, 2011, Jacob Beckel, Anazao's chairman and CEO, distributed a letter concerning his company's position to current and former physician clients. Some of these physicians also use, or at least once used, AIS. The letter does not explicitly speak of AIS but refers to "a billing practice by at least one compound-

ing pharmacy wherein the pharmacy bills Medicare directly on behalf of the physician, patient, or both." Exhibit F to Plaintiff's Reply Brief [Docket No. 12–6]. The letter avers that Anazao consulted with legal counsel, a Medicare billing expert, and various state Medicare offices regarding the legality of this billing model and was advised that the method runs afoul of CMS guidelines. *See* hearing Exhibit P–3.

According to Bell, although the January 18 letter does not mention AIS by name, his company began to suffer financial injury shortly thereafter.[1] Bell complains that the letter led a group of physicians to withdraw an invitation to an important conference and that he has received repeated phone calls from doctors expressing concerns regarding the letter's claims. Naturally, many of these physicians, according to Bell, have expressed great reluctance to do business with him or AIS for fear of being accused of Medicare fraud.

On January 31, 2011, AIS filed a Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief [Docket No. 1], which it superseded on February 1, 2011, with a First Amended Motion for Temporary Restraining Order, Preliminary Injunction and Complaint for Other Relief [Docket No. 5] (herein after "the Complaint"). The prayer for relief seeks the following intervention:

AIS moves this Court for an Order against Defendant Anazao enjoining and restraining it, its officers, agents, attorneys, and all other persons acting in concert with it, or any of them for the benefit of themselves, from:

1.  directly or indirectly, in his or her own capacity or through any other person or persons, contact any other person about the billing practices of AIS;

2.  directly or indirectly, in his or her own capacity or through any other person (I) solicit or contact for business purposes any existing customer, supplier, or prospective customer or supplier, of AIS or any subsidiary for the purpose of improperly competing with AIS or (ii) interfere with existing or proposed agreements or other arrangements, or knowingly interfere with future agreements or other arrangements, between AIS or any subsidiary on the one hand or any other person on the other hand.

*Id.* at 4.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the motion for a preliminary injunction came before the Court for a hearing at 10 a.m. on February 10, 2011, at which both parties were represented by counsel.[2] Counsel for AIS pre-

1.  Although the January 18 letter does not mention AIS by name, the Court is satisfied that counsel for AIS elicited testimony at the February 10 hearing sufficient to demonstrate that the memo's subject is AIS. In the weeks preceding the letter's dissemination, counsel for the competitors engaged in a shouting match regarding the legality of AIS's business model and the parties' solicitations of other physician and pain clinic customers. *See, e.g.,* February 10 hearing Exhibits P–3, P–5, P–7, and P–8. In fact, counsel for Anazao advised AIS in one of its letters that it "ha[d] since filed a Complaint with CMS regarding AIS's purportedly fraudulent billing practices,

and ha[d] received confirmation from CMS that the Medicare Fraud Division is investigating AIS's billing practices." Exhibit P–8. The letter further enunciated Anazao's demand that AIS immediately cease and desist its billing practices and notify Anazao's former physician customers who had begun doing business with AIS. *Id.*

2.  AIS initially sought a temporary restraining order without notice to Anazao. However, the Court ordered that notice be provided. The matter initially was set to be heard on February 1, 2011, before the Honorable Dan Jordan, but Judge Jordan entered an order of

sented testimony from three witnesses, and the hearing adjourned just before 5 p.m.

## ANALYSIS

The ultimate success or failure of AIS's case is not the issue before the Court. Instead, the matter at bar is AIS's motion for a preliminary injunction, a form of relief viewed as "an extraordinary and drastic remedy...." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Texas,* 905 F.2d 63, 65 (5th Cir.1990). Such an order should not issue unless a denial of the motion would render the judicial process irrelevant.

A court should grant a preliminary injunction only if the movant demonstrates the following:

> (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Bluefield Water Ass'n Inc. v. City of Starkville, Miss.,* 577 F.3d 250, 252–53 (5th Cir.2009).

■ There is no balancing test; the movant must satisfy each requirement before the Court will grant the requested relief.

■ The prongs of this test present mixed questions of fact and law, and the injunction cannot issue "unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.* at 253 (quotation omitted). Stated another way, "[i]f the movant fails clearly with respect to any one of the four criteria, then the preliminary injunction shall be denied." *Metal Mgmt. Mississippi, Inc. v. Barbour,* 2008 WL 3842979 at *4 (S.D.Miss.2008) (citing *Black Fire Fighters Ass'n,* 905 F.2d at 65).

■ Beyond this extraordinarily high standard, this Court proceeds in the case at bar with an added degree of caution because AIS seeks to enjoin Anazao's speech, the freedom of which is one of our Constitution's most fiercely protected rights. Although this dispute does not involve political speech at the core of the First Amendment, "[a]ny system of prior restraints of expression ... bear[s] a heavy presumption against its constitutional validity." *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)). One who would impose a prior restraint "carries a heavy burden of showing justification...." *Org. for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).

■ **Whether AIS Has Shown a Substantial Likelihood that It Will Prevail on the Merits.** As a preliminary matter, the Court must identify the specific claims brought by AIS in its Complaint, which does not explicitly delineate the torts for which it seeks relief. This inquiry recognizes at all times that the Federal Rules of Civil Procedure require only that a complaint register "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). So long as a complaint "give[s]

recusal [Docket No. 4]. The undersigned then set this TRO hearing for 1:30 p.m. on February 2, 2011. The parties appeared and agreed to continue the matter until February

10, 2011, which they agreed would provide sufficient time to submit any necessary pleadings and to prepare for a hearing on the request for a preliminary injunction.

the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests," it is adequate. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Paragraph 8 of the Complaint avers that a preliminary injunction is necessary "to protect the business relationships of AIS," which suggests that AIS claims tortious interference with business relations. Additionally, Paragraph 7 addresses what AIS views as the "dissemination of erroneous and false information" capable of damaging its reputation, and Paragraph 8 argues that Anazao "continu[es] to disseminate misleading information concerning AIS to doctors." These statements appear to refer to the tort of libel.[3]

The arguments contained in AIS's Reply Brief [Docket No. 12] buttress these inferences. In that filing, AIS argues that Anazao's "letter was so misleading that it evidences a reckless disregard for the truth," *id.* at 1, which is an element of proof requisite to many defamation claims. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (holding that the First Amendment requires proof of "actual malice" in a claim for defamation of a public figure); *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (outlining similar but slightly less rigorous standard for public figures). Furthermore, the Reply Brief makes a detailed argument regarding the elements requisite to a claim of tortious interference with business relations. Reply Br. at 8.

Therefore, in order to demonstrate its need for a preliminary injunction, AIS must show a substantial likelihood that it will prevail on the merits of either of the two claims appearing in its complaint: tortious interference with business relations and libel.

It has done so with neither claim.

■ The elements of tortious interference with business relations are:

(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiff[ ] in [its] lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted.

*PDN, Inc. v. Loring,* 843 So.2d 685, 688 (Miss.2003).

■ Although Beckel clearly drafted the January 18 letter intentionally, AIS has made no clear showing that it is likely to succeed in proving the remaining elements. At the February 10 hearing, counsel for Anazao argued that Beckel sent the letter to warn former customers, who remained friends of his, that billing habits not in conformity with CMS guidelines could expose them to legal repercussions. Such a possibility, at this early stage, cannot be discounted with the dismissiveness that would be required to enter a preliminary injunction. Furthermore, beyond Bell's lost invitation to a conference, the question of whether actual loss and damage has resulted can be answered, on this record, only through utter speculation. AIS does not know the breadth of Anazao's dissemination, and although Bell testified at the February 10 hearing that AIS's income has fallen by roughly 25 percent and that he has received calls from perhaps as many as 50 physicians about

---

**3.** During his testimony at the February 10 hearing, Bell complained that Anazao was "defaming" him and his company. This grievance supports the conclusion that AIS is pursuing a claim for libel.

the letter, his testimony alone does not amount to evidence of actual loss bearing the degree of clarity that must be found before a court enters a preliminary injunction.

■ The movant's likelihood of success on the merits must be more than negligible. Indeed, in order to satisfy this portion of the test, courts have concluded that no doubt may remain that the movant would be successful on the merits. *Metal Mgmt. Mississippi, Inc. v. Barbour*, 2008 WL 3842979 at *5 (S.D.Miss.2008) (citing *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.1963), *cert. denied*, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963)).

■ Likewise, the record does not show a substantial likelihood that AIS is likely to succeed on a claim of libel. In order to succeed on a defamation claim, a plaintiff must prove "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Armistead v. Minor*, 815 So.2d 1189, 1193 (Miss.2002). "Truth is an absolute defense to a defamation lawsuit in Mississippi." *Journal Publ'g Co. v. McCullough*, 743 So.2d 352, 360 (Miss. 1999). Based on the record as it presently exists, one cannot assign substantial likelihood to the prospect that AIS will succeed in this argument. Indeed, if the testimony

elicited at the February 10 hearing stands for any single conclusion at all, it is that neither party has interpreted the CMS guidelines unreasonably. On direct examination, Bell outlined provisions of the CMS guidelines that, in his view, permits the billing practice that Anazao attacked in its January 18 letter. On cross-examination, counsel for Anazao attacked the basis for Bell's conclusion to a degree sufficient to demonstrate, at the very least, the existence of a basis for a reasonable disagreement. Clearly, these rules are frequently confusing and, at times, seemingly contradictory.[4]

AIS has not presented evidence establishing a substantial likelihood that its view, rather than that of Anazao, will emerge as the truth. Therefore, it has not shown a substantial likelihood of success on the merits of a claim for defamation.

■ **Whether AIS Has Shown a Substantial Threat That It Will Suffer Irreparable Injury if the Injunction is Not Granted.** AIS argues that the wounds it bears cannot be healed by the judicial system's typical salve, money damages. Rather, given the potentially ongoing nature of what AIS views as tortious activity, it insists that it faces the prospect of further injury to its good name that cannot be undone. *See* Complaint at 3.

AIS has presented no evidence on this point, such as testimony that further injury could result in the permanent crippling of the company. The most that can be

---

4. Furthermore, the Court does not doubt that the fiscal intermediaries responsible for payment of the parties' claims could have given different advice based on different interpretations of the regulations. In the January 18 letter to the physician customers, Anazao claimed that it "was specifically directed by the Medicare agency NOT to engage in the practice of billing Medicare directly as it was not an acceptable billing practice." Exhibit F

to Def.'s Reply Br. Moreover, according to Anazao, Medicare, advised that such billing practice would be viewed as improper. The record contains no evidence suggesting that Anazao represented a falsehood. Likewise, the Court sees no reason in the record to distrust AIS in its assertion that authorities have vindicated the legal validity of its billing practices.

made of the record, at this point, is that any injuries currently being sustained by AIS might increase with time. This alone does not demonstrate irreparability.

Anazao's summary of AIS's argument is compelling: "In short, AIS claims it may lose customers. If AIS is right, ... then it can file a complaint ... and seek money damages against Anazao." Defendant's Memorandum in Opposition [Docket No. 9] at 11. This Court agrees.

■■■ Undoubtedly, ongoing injuries are more likely than others to attract a preliminary injunction. *See Spiegel v. City of Houston,* 636 F.2d 997, 1001 (5th Cir.1981) (holding that "the possibility of customers being permanently discouraged from patronizing one's business" is a substantial threat of irreparable harm). But at this point in the case, AIS's proof shows at the most that many AIS customers have expressed concerns over the contents of the January 18 letter during a period of time that business has trailed off. The record contains no evidence, such as testimony from a jilted AIS customer, that demonstrates a connection between those two phenomena. Moreover, and unlike the facts underlying the *Spiegel* decision, the facts of the case at bar show that any legally actionable damage is contained within a certain, determinable universe: the recipients of the January 18 letter, anyone with whom the recipients have discussed its contents, and those upon whom the letter has laid a fear to do business with AIS. This information is adequately discernable through the discovery process.

Moreover, courts in this circuit have denied preliminary injunctions even when requested in efforts to avoid permanent losses of irretrievable economic opportunities. In *Newsome v. Mississippi High School Activities Association,* 2007 WL 4268771 (N.D.Miss.2007) (Davidson, J.), the court declined to order the defendant to permit the plaintiff to play his senior season of basketball. In that case, the plaintiff argued "that if [the child] c[ould] not play basketball his senior year, his basketball skills and the likelihood of his being offered a scholarship and an NBA contract w[ould] diminish." *Id.* at *3. But ultimately, the prospect of even that injury did not call for an injunction because "[t]he central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." *Id.* (citing *City of Meridian v. Algernon Blair, Inc.,* 721 F.2d 525, 529 (5th Cir. 1983)). *See also Canal Auth. of State of Florida v. Callaway,* 489 F.2d 567, 574 (5th Cir.1974) (observing that an "adverse impact" is not necessarily an "irreparable or irreversible" impact).

Fundamentally, AIS has shown no risk of imminent damage beyond the loss of business, and courts frequently have held that such an injury does not warrant a preliminary injunction. "It is well settled that monetary loss, even where substantial, does not, in and of itself, constitute irreparable harm. Monetary loss may constitute irreparable harm only where the movant's very existence is threatened, i.e., where an act threatens an ongoing business with destruction as opposed to mere disruption." *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.,* 562 F.Supp. 279, 283 (E.D.Ark.1983). *See also Newport Tire & Rubber Co., Inc. v. Tire & Battery Corp.,* 504 F.Supp. 143, 149 (E.D.N.Y.1980) ("In this circuit, it is well settled that an act that threatens an ongoing business with destruction causes that business irreparable harm.").

■■■ In the case at bar, the evidence before the Court shows no such risk. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Al-*

*guire,* 628 F.3d 164, 179 (5th Cir.2010). "Irreparable harm requires a showing that: (1) the harm to the plaintiff is imminent; (2) the injury would be irreparable; and (3) that the plaintiff has no other adequate legal remedy." *Metal Mgmt. Mississippi, Inc. v. Barbour,* 2008 WL 3842979 at *12 (S.D.Miss.2008) (citing *Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir.1975)). At this point, any injuries remain speculative and do not satisfy the command that "irreparable harm must be proven separately and convincingly." *Metal Mgmt. Mississippi,* 2008 WL 3842979 at *12. So long as the damages can be measured and remedied through a monetary sum, the damages are not irreparable. *Id.; Newsome,* 2007 WL 4268771 at *3 n. 3. AIS's evidence does not clearly show a substantial threat that it will suffer injuries that cannot be mended with monetary damages. Therefore, AIS has not shown a substantial threat that it will suffer irreparable injury if the injunction is not granted.

**Whether AIS Has Shown That Its Threatened Injury Outweighs the Harm to Anazao.** AIS claims that "[i]f the injunction is not issued and Anazao is free to distribute the inaccurate information, AIS stands to lose the business relations and customer goodwill that it relies on. There is no potential harm or injury to Defendant if a[n] ... injunction [is] granted." Complaint at 3.

Anazao argues that a review of AIS's motion reveals a request for injunctive relief so broad that Anazao's injury would outweigh any now being inflicted on AIS. In Anazao's view, AIS overreaches by "seek[ing] an injunction to restrain Anazao from soliciting or having any 'contact for business purposes,' with current or even future potential customers 'or knowingly interfer[ing] with future agreements or other arrangements, between AIS or any subsidiary....' " Def. Memo. in Opp. at 12.

Even if this Court found for AIS on the other prongs of the four-part test governing this inquiry, this prayer for relief still would stun for its remarkable breadth. AIS urges this Court to order Anazao to desist from "contact[ing] for business purposes any existing customer, supplier, or prospective customer or supplier, of AIS" in a manner that AIS views as "improperly competing." Given that AIS and Anazao are direct competitors, such an order effectively would compel Anazao to stop doing business altogether. Even if one were to view Anazao's conduct as impermissibly troublesome to AIS's business, the Court still would meet with great difficulty understanding how this injury would be a greater one than the act of putting Anazao out of business.[5]

And ultimately, the absence of evidence on this point again leaves the Court alone with its speculations. AIS has presented no evidence demonstrating that an injunction would harm Anazao less than the lack of an injunction would harm AIS, and given the heavy burden resting on AIS's shoulders, this Court cannot accept such a speculative argument, particularly when it stands unaccompanied by supporting evidence.

AIS has not shown that its threatened injury outweighs the harm of an injunction to Anazao.

---

**5.** Even more troubling is AIS's desire for an order prohibiting Anazao and its officers, agents, attorneys, and all other persons acting in concert with it from contacting any other person about the billing practices of AIS. As requested, such an order would bar Anazao from reporting to proper authorities what it believes may be fraudulent billing practices. Certainly, no court should restrict citizens from reporting what they believe to be violations of criminal law.

■ **Whether AIS Has Shown that Granting the Preliminary Injunction Will Not Disserve the Public Interest.** As the parties' positions on this final point illustrate, this fourth piece of the test is the most amorphous of the quartet. AIS argues that "[i]t is important to the public interest that owners of ongoing businesses compete fairly. This is especially important when the competition is between two medical companies and health care costs of the general public are involved." Complaint at 3–4. With similar nebulousness, Anazao contends that "[t]he public interest requires that proper entities properly and accurately bill Medicare for reimbursement of . . . narcotics." Def. Memo. in Opp. at 13.

Both positions certainly are facially tenable, but ultimately, the fact that neither compels irresistibly over the other leads this Court to conclude that AIS has not carried its burden on this point.

This country values above perhaps all others the guarantee of an "unfettered interchange of ideas. . . ." *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Few are the holdings of this nation's courts finding that the public benefits from less debate rather than more, and for good reason: our society holds dear the principle that "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).

The line of precedent supporting this position is longer than perhaps any other, but suffice it to say that AIS has not shown by a measure sufficient to carry the day that it should be able to procure Anazao's silence and saved the trouble of a public rebuttal. So long as violence is not imminent, the occasions when open discourse disserves the public interest are virtually nonexistent. *See Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

■ Undoubtedly, the speech at issue in the case at bar is not the species of classic political speech "at the core of what the First Amendment is designed to protect." *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (plurality opinion). Still, commercial speech is not without a degree of constitutional protection, as the Supreme Court held in *Central Hudson Gas and Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980):

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. 2343.

The facts, as they currently appear to the Court, do not satisfy the *Central Hudson* test for suppression of commercial speech so as to demonstrate that the preliminary injunction will not disserve the public interest. First, Anazao's letters concern a legal activity and do not clearly appear to be misleading. Second, given the absence of clear evidence that the letters are misleading, the Court cannot conceive a substantial governmental interest

that would exist to support an injunction. And even if an injunction directly advanced such an interest, the great breadth of AIS's prayer for relief, *see* pp. 974–76, *supra*, is undoubtedly more extensive than necessary to protect that interest. Indeed, short of moving the Court to order Anazao's agents not to speak even among themselves, one has a hard time imagining how the injunction sought by AIS could be any more extensive.

AIS has not shown that granting the preliminary injunction will not disserve the public interest.

### CONCLUSION

Based on the evidence currently constituting the record, neither the precedent relevant to preliminary injunctions in general nor the body of caselaw concerning commercial speech and the First Amendment entitle AIS to the preliminary injunction it seeks.

Therefore, AIS's motion for temporary restraining order and motion for preliminary injunction must be and hereby are denied.