# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2023

Lyle W. Cayce
Clerk

No. 22-50442

Direct Biologics, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Adam McQueen; Vivex Biologics, Incorporated; Vivex
Biologics Group, Incorporated,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC 1:22-CV-381

---

Before Davis, Dennis, and Higginson, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Direct Biologics, LLC ("DB") brought claims for breach of covenant to not compete and misappropriation of trade secrets against Adam McQueen, DB's former employee, and Vivex Biologics, Inc. ("Vivex"), McQueen's new employer. After granting DB a temporary restraining order based on its trade secret claims, the district court denied DB's application for a preliminary injunction. Finding that DB's claims were subject to arbitration, the district court also dismissed DB's claims against McQueen and Vivex and entered final judgment. For the following reasons, we

No. 22-50442

VACATE the district court's orders denying DB's motion for a preliminary injunction and dismissing DB's claims, and REMAND for further proceedings consistent with this opinion.

## I.

## A.

DB is a biotechnology company in the field of regenerative medicine, which develops and manufactures pharmaceutical products derived from biological sources. It offers two main product lines. The first, AmnioWrap, is an allograft skin substitute used for tissue repair and regeneration, with applications for slow-healing wounds, burn injury, and general surgery. The second, ExoFlo, is a proprietary extracellular vesicle ("EV") product similar to stem cell therapy, with applications in the treatment of severe COVID-19. Understanding how to navigate Food and Drug Administration ("FDA") regulatory channels is an important aspect of DB's business. In 2021, DB had to withdraw ExoFlo from the market after the FDA announced that EV products had to undergo formal approval as "drugs and biological products" under section 351 of the Public Health Service Act ("PHSA"). This spurred a race among DB and its competitors to secure FDA approval for their products. At the time this appeal was briefed, DB's product was undergoing the final phase of clinical trials to become the first purely biologic EV drug to receive commercial approval for use in the United States.

DB hired McQueen as its third employee in 2018. During his four years at DB, McQueen held various senior titles and became an equity member of DB. McQueen served as an Executive Vice President at DB from April 30, 2018, until March 28, 2022, when he resigned from DB.[1] His

---

[1] McQueen's employment with DB was formally terminated for cause on March 29, 2022.

responsibilities included participating in intellectual property and product development, sales initiatives, operations, regulatory and compliance as well as clinical aspects of DB's business. McQueen's wide-ranging responsibilities and equity member status allowed him access to DB's confidential and trade secret information. DB alleges that McQueen, as a high-level executive, was one of only a handful of individuals at the company intimately involved with both the AmnioWrap and ExoFlo product lines, and who knows the company's most closely guarded secret: the formula and production specifications for its flagship technology, ExoFlo.

## B.

McQueen and DB are party to two key agreements: an Employment Agreement, governed by Texas law, and an Operating Agreement, governed by Wyoming law. Each agreement contains: (i) a non-competition covenant temporarily prohibiting McQueen from accepting certain employment with enterprises that compete with DB, and (ii) a confidentiality covenant prohibiting McQueen from using or disclosing confidential information he acquired from DB. The Employment Agreement's non-compete provision is narrower than that of the Operating Agreement. While the Employment Agreement only prohibits McQueen from providing "services . . . similar to that which [he] provided to [DB]," the Operating Agreement more broadly prohibits any employment with a competitor.

The Employment Agreement also includes an arbitration provision requiring McQueen and DB to arbitrate any "controversy or claim" arising from the agreement, their employment relationship, or the termination of such a relationship. While the provision requires arbitration of "all issues of final relief," it also includes a carve-out allowing either of the parties to seek preliminary injunctive relief in federal court.

## C.

Following his resignation from DB in March 2022, McQueen joined Vivex as Vice President of Product Strategy. Vivex is a direct competitor of DB that sells and markets allograft products and develops EV products. DB contends that Vivex is one of only a few companies with the "resources, infrastructure, and commercial motive in place to immediately and wrongfully exploit" the confidential DB information that McQueen carried over with him to Vivex. In addition, DB alleges that as a senior manager at Vivex, McQueen is well-positioned to help Vivex compete with DB's AmnioWrap product line and guide Vivex through accelerated development and FDA approval of new EV products.

DB further alleges that after McQueen began working for Vivex, DB discovered that while McQueen was still working for DB, he had linked his personal Dropbox[2] account to DB's online accounts. DB contends that McQueen, using Dropbox, deliberately misappropriated to his personal control numerous documents containing DB's confidential information and trade secrets, including some of the company's most sensitive proprietary information. DB asserts that it never authorized McQueen to link his personal Dropbox account to its cloud-based corporate accounts or place company documents or information on his personal cloud storage account, and that conduct violates express company policy. DB further alleges that McQueen has shared this confidential trade secret information with Vivex to

---

[2] "Dropbox is a company that hosts an off-site virtual storage application . . . [a]fter creating an account, users may place items in a Dropbox folder and then access them remotely through the application[.]" *United States v. Rivenbark*, 748 F. App'x 948, 950 (11th Cir. 2018).

"destroy [DB's] hard-earned competitive advantage" in the allograft and EV technology spaces.

McQueen contends that he has complied with his contractually agreed covenants and works for Vivex in a non-competitive role. McQueen also denies that he has used or disclosed DB's confidential information and asserts that he has "repeatedly sought to return all information and documents to Plaintiff." McQueen further claims that he began using a personal Dropbox account when he first started working for DB because DB had not yet given him a company-owned computer or access to a company-controlled filesharing or storage platform. McQueen states that he has not modified any DB document linked between his personal and company Dropbox accounts since July 2, 2021. While Vivex's Vice President for Research and Development testified that McQueen does not work on any "area[s] of competition" between DB and Vivex, McQueen testified that the responsibilities of his new job included helping with the launch of "an allograph tissue product" at Vivex.

## D.

As relevant to this appeal, DB brought various causes of action[3] against McQueen and Vivex: (1) state-law breach of contract based on the non-compete covenants; (2) trade secret misappropriation under the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq.*; (3) trade secret misappropriation under the Texas Uniform Trade Secrets Act (TUTSA),

---

[3] DB also brought state-law claims for breach of contract based on McQueen's alleged breaches of the non-solicitation covenants in the Employment Agreement and Operating Agreement; breach of contract based on McQueen's alleged breach of the duty of loyalty under the Employment Agreement; breach of fiduciary duty; and tortious interference with contract. These claims were unpreserved or abandoned as a basis for obtaining a preliminary injunction.

Tex. Civ. Prac. & Rem. Code §§ 134A; and (4) state-law breach of contract based on McQueen's confidentiality covenants.

On April 25, 2022, DB moved for a TRO to (1) compel McQueen to comply with his noncompete covenants and (2) return and stop accessing, using, or sharing DB's "confidential and trade secret information." DB simultaneously moved for a preliminary injunction requesting the same relief. The district court granted the requested TRO on May 4, 2022, ordering McQueen to cease working for Vivex and to not use or disclose DB's confidential or trade secret information. *See Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1409984 (W.D. Tex. May 4, 2022) ("*DB I*"). However, on May 24, 2022, after an evidentiary hearing, the court denied the requested preliminary injunction. *See Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1693995 (W.D. Tex. May 26, 2022) ("*DB II*"). The district court denied DB's motion on the ground that DB failed to demonstrate irreparable harm. *See DB II*, 2022 WL 1693995, at *6.

In a separate part of its order, the court concluded that all of DB's claims were subject to the parties' arbitration agreement. *See id.* at *9. The court then dismissed the case, relying on Fifth Circuit precedent which holds that where all the plaintiff's claims must be arbitrated, dismissal rather than a stay pending arbitration is appropriate. *See id.* (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). This appeal followed.

## II.

A preliminary injunction is an "extraordinary and drastic remedy." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). A party seeking a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). To issue such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). Only when the movant has "clearly carried the burden of persuasion" should a court grant preliminary injunctive relief. *Anderson*, 556 F.3d at 360.

The ultimate decision for or against issuing a preliminary injunction is reviewed under an abuse of discretion standard. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (quoting *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003)). "The district court abuses its discretion if it relies on clearly erroneous factual findings in deciding whether to grant a preliminary injunction or relies on 'erroneous conclusions of law.'" *Atchafalaya Basinkeeper v. United States Army Corps of Engineers*, 894 F.3d 692, 696 (5th Cir. 2018). The factual findings rendered by the district court must be left "undisturbed unless clearly erroneous." *Bluefield*, 577 F.3d at 253 (quoting *Guy Carpenter*, 334 F.3d at 463). Conclusions of law are reviewed *de novo. See id.*

## III.

The district court denied DB's motion for a preliminary injunction based on the absence of irreparable harm. DB argues on appeal that the district court erred in declining to apply a Texas law presumption of irreparable harm, and in finding that DB had not presented sufficient evidence of irreparable harm because DB in fact demonstrated that McQueen had already disclosed trade secret information to Vivex. McQueen and Vivex respond that the district court properly denied the motion for preliminary injunction because DB was not entitled to the Texas law presumption of

irreparable harm, and in any event, did not adduce any evidence of irreparable harm.

This appeal thus turns on (1) whether the district court should have applied a presumption of irreparable harm under Texas law based on McQueen's ongoing breach of the non-compete covenants, and (2) assuming the district court properly declined to apply the presumption, whether it erred in holding that DB failed to demonstrate irreparable harm. Because the parties acquiesced to Texas law before the district court, *see DB I*, 2022 WL 1409984, at *8 n.3, and before this court, we will apply Texas law in evaluating the irreparable harm factor in connection with DB's claims that McQueen breached the non-compete and confidentiality covenants of the Employment Agreement, as well as its claim under the TUTSA.

## A.

The district court first analyzed DB's invocation of a Texas doctrine[4] providing that "proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury." *DB II*, 2022 WL 1693995, *6 (quoting *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 236 (Tex. App.—Houston [1st Dist.] 2003, not pet.)). In declining to apply the presumption, the district court found insufficient evidence that: (1)

---

[4] Though the parties did not provide a choice of law analysis, it is unclear whether federal courts should apply a *state-law* 'presumption of irreparable harm' when determining whether a preliminary injunction should issue in *federal* court. *Compare Heil Trailer Int'l. Co. v. Kula*, 542 F. App'x 329, 336-38 (5th Cir. 2013) (vacating the denial of a preliminary injunction in part on the basis that Texas courts presume irreparable harm where trade secrets have been misappropriated) *with Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (citing only federal authorities in finding no error in the district court's conclusion that irreparable harm was likely).

No. 22-50442

McQueen actually "us[ed] the experience he acquired from DB to compete with it," such as by "market[ing] products in direct competition with DB," or (2) "McQueen has disclosed confidential or trade secret information to Vivex." *Id.* at *7. DB argues on appeal that it demonstrated that McQueen is in violation of the non-compete covenants, and as such, DB was entitled to a presumption of irreparable harm under Texas law.

The district court did not abuse its discretion[5] by declining to presume irreparable injury based on McQueen's breach of his non-compete covenants. As previously explained, the Employment Agreement broadly prohibited him from providing "similar" services to Vivex that he provided to DB. *See DB II*, 2022 WL 1693995, at *2. The Operating Agreement covenant was even broader. *See id.* at *3. Thus, McQueen could have breached these covenants even without actually using or disclosing DB's confidential information or trade secrets. But the district court found that DB was still required to present some evidence of harm [6] apart from the breach to merit a presumption of irreparable harm. *DB II*, 2022 WL 1693995, at *7.

In declining to apply the presumption, the district court found that evidence did not "conclusively demonstrate that McQueen has disclosed confidential or trade secret information." *DB II*, 2022 WL 1693995, at *7. In

---

[5] "The decision to grant or deny a temporary injunction lies within the trial court's sound discretion." *Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, 2018 WL 1414837, at *7 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.).

[6] DB also argues that "the district court erroneously required Direct Biologics to 'conclusively demonstrate' that it has *already* been injured by McQueen's violation of his noncompete obligations." It suggests that the district court's opinion was in tension with the prospective nature of an injunction. DB is incorrect. As just discussed, the district court merely held that DB must produce evidence of ongoing (and, therefore, past) harm in order to obtain a *presumption* of irreparable injury should an injunction not issue. *See DB II* 2022 WL 1693995, at *7. Outside of that context, the district court did not require DB to show past harm.

fact, the court found that DB failed to produce "*any* evidence that McQueen actually is . . . using the experience he acquired from DB to compete with it," such as by "market[ing] products in direct competition with DB."[7] *Id.* (emphasis added); *see also Communicon*, 2018 WL 1414837, at *7 ("employer-movant for a temporary injunction in a suit to enforce a noncompete agreement must come forward with evidence that the high-level employee is actually breaching the noncompete agreement in order to trigger the presumption"). Some Texas courts have declined to apply the presumption in the absence of independent proof of harm. *See, e.g., DGM Servs., Inc. v. Figueroa*, No. 01-16-00186-CV, 2016 WL 7473947, at *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2016) (declining to apply presumption because "well-settled Texas Supreme Court law makes clear an applicant bears the burden to plead and adduce proof of probable, imminent, and irreparable injury to obtain a temporary injunction") (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

Moreover, the district court could have found the presumption rebutted by Vivex's evidence that McQueen was not in fact competing with DB through his work for Vivex. Vivex's Vice President of Research and Development testified that individuals can "work at Vivex effectively without sharing information about any of Direct Biologics' plans or processes;" that "McQueen specifically [has] been precluded from working in the area of competition between the two companies," including

---

[7] Different non-compete agreements may be geared towards protecting different interests, which may factor into whether a district court chooses to infer irreparable harm from the mere fact of a breach. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 697-98 & n.4 (Tex.App.—Houston [14th Dist.] 2004) (presumption did not apply where "the sole purpose of the noncompete clause was to enforce the nondisclosure clause" and there was no evidence that defendant "was currently violating the nondisclosure clause or that there was any likelihood that she would in the future;" in the alternative, if the presumption applied, it was rebutted).

allographic products; and that McQueen "abided by that separation." Moreover, DB's president conceded that he had no knowledge of improper disclosure. To overcome the foregoing evidence, DB pointed to the job description at Vivex that McQueen applied to, which states that the individual selected will "[a]ssist in the further launch of ViaDisc," an "allograft product." DB also highlighted testimony by McQueen in which he is asked about this document, and answered affirmatively when asked whether "you are expected to assist in the further launch of ViaDisc." But McQueen may have simply been confirming what the document said, and as just noted, the court could have credited the testimony of Vivex's Vice President of Research and Development that McQueen was sequestered from allographic products that compete with DB.

Thus, the district court did not abuse its discretion in declining to apply a presumption of irreparable harm based on McQueen's breach of the non-compete agreement.

## B.

After it determined that Texas' presumption of irreparable harm did not apply, the district court denied DB's motion on the ground that it "proffered no evidence to show that a monetary remedy would be inadequate compensation for any injury allegedly incurred as a result of McQueen's alleged misconduct." *DB II*, 2022 WL 1693995, at *8. However, the court: (i) did not make any findings as to whether it was likely that McQueen would use or disclose DB's confidential and trade secret information during the pendency of the lawsuit (finding only that there was no evidence that he *already* used or disclosed such information); and (ii) did not make any assessment as to whether money damages would be easy or difficult to

quantify.[8] *See id.* at *6-*8; *Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015) (applying Texas law and affirming district court's denial of preliminary injunction based on its "individualized assessment of whether disclosure had occurred or was likely to occur in this case."); *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("We have recognized that a finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes establishment of the dollar value of the loss especially difficult or speculative.") (cleaned up).

The district court found insufficient evidence that use or disclosure of DB's confidential or trade secret information *had* occurred, *DB II*, 2022 WL 1693995, at *7, yet it did not make an "individualized assessment of whether disclosure . . . [is] *likely* to occur" between now and final judgment. *Cardoni,* 805 F.3d at 590 (emphasis added). For instance, the court did not state whether it credited testimony that McQueen was not involved in any allograft work. And, as noted, there was some testimony from McQueen from which a contrary inference could be made. Moreover, although the court noted McQueen's testimony that "he has sought to return DB's confidential information," it did not say whether it credited that testimony. *DB II*, 2022 WL 1693995, at *7. DB, for its part, asserts that McQueen has not yet returned the files and instead intends to delete the files without properly preserving important metadata. The district court erred in failing to examine "items of evidence in the record and articulate[] reasons that would explain" its apparent conclusion that irreparable harm would be unlikely to occur

---

[8] In addition, the court did not separately analyze DB's claims under the non-compete covenants, confidentiality covenants, DTSA, or TUTSA. *DB II*, 2022 WL 1693995, at *8.

during the pendency of this litigation. *Heil Trailer Intern. Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013).

The district court also gave short shrift to the fact that, *if* McQueen does misappropriate DB's trade secrets or confidential information during the pendency of the proceedings, any damages resulting therefrom would be difficult to quantify. *See DB II*, 2022 WL 1693995; *Sharma v. Vinmar Intern., Ltd.*, 231 S.W.3d 405, 427 (Tex.App.—Houston [14th Dist.] 2007, no pet.) ("The misuse of trade secrets leading to the loss of an existing business is another example of irreparable harm entitling an applicant to injunctive relief."). On appeal, McQueen notably does not defend the district court's position that any harm caused by McQueen's violations of the non-compete or misuse of trade secrets would be adequately compensable by monetary damages, but rather asserts that the evidence showed that he was not likely to cause competitive harm to DB or misuse such information. Given that Texas courts have found that "[l]ost opportunity to create or gain control of a new market may result in unquantifiable losses for which there is no adequate remedy at law," the district court erred in failing to analyze whether the disclosure of DB's trade secrets during the pendency of this dispute would cause damages that are easily quantifiable. *See, e.g., Allied Mktg. Grp.*, 878 F.2d at 810 n.1; *Garth v. Staktek Corp.*, 876 S.W.2d 545, 549 (Tex. App.—Austin 1994, writ dism'd w.o.j.); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ("The only effective relief available to appellee is to restrain appellants' use of its trade secrets and confidential information pending trial.").

Remand is thus proper to allow the district court to make particularized findings regarding irreparable harm; specifically, the likelihood of misuse of DB's information, *see Cardoni*, 805 F.3d at 590, and the difficulty of quantifying damages should such misuse occur, *see Heil*

No. 22-50442

*Trailer*, 542 F. App'x at 335-37 (remanding denial of preliminary injunction where "the district court examined no items of evidence in the record and articulated no reasons that would explain this result"). Should the district court determine that irreparable harm is likely, it should proceed to evaluate the remaining preliminary injunction factors in the first instance. *See Guy Carpenter*, 334 F.3d at 469 (remanding so district court could consider additional preliminary injunction factors not decided below).

## C.

Because we remand this case so that the district court can consider whether a preliminary injunction should issue in this case, we must also vacate the district court's order dismissing DB's claims against McQueen and Vivex. The parties do not dispute that DB's claims must ultimately be submitted to arbitration, *DB II*, 2022 WL 1693995, at *9, or that the arbitration provision contains a specific carve-out allowing courts to rule on requests for preliminary injunctive relief. However, because the dismissal below constituted a final judgment, a preliminary injunction cannot be entered unless that judgment were vacated. *See Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 191 (5th Cir. 2015) ("Permanent injunctions survive dismissal of the case; preliminary injunctions do not."). [9] We therefore vacate the district court's dismissal of DB's claims and entry of final judgment.

---

[9] Under the Federal Arbitration Act, a court "shall . . . stay" the proceedings upon finding that any issue is arbitrable. 9 U.S.C. § 3. The statute makes no reference to dismissal. Nevertheless, our precedent demonstrates that "dismissal is appropriate when all of the issues raised in the district court must be submitted to arbitration." *Adam Technologies Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013). If, on remand, the district court determines that a preliminary injunction should issue to preserve the status quo while the arbitration is pending, it should stay the

No. 22-50442

## IV.

Based on the foregoing, we **VACATE** the district court's orders denying DB's motion for a preliminary injunction and dismissing DB's claims. We **REMAND** this case with instructions to conduct further proceedings in accordance with this opinion.

---

proceedings in lieu of dismissal, 9 U.S.C. § 3, so as to preserve jurisdiction to enforce its injunction.